**EXHIBIT "B"**



**STANDARD FORM OF STORE LEASE**
The Real Estate Board of New York, Inc.

Number 4.
executed

**Agreement of Lease,** made as of this **31st** day of December **2007** ~~parts~~, between **577-10 REALTY COMPANY** having an office at AIB Management Corp.*, party of the first part, hereinafter referred to as OWNER, and **ANUJ-RANI WEST SIDE LLC,** having an office at #1 Laurel Lane, Old Westbury, New York 11568 party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner ~~the~~ ( the "demised premises" or ~~the Condominium Unit"~~ ) shown on Exhibit A annexed

in the building known as  500 West 43 Street(the "building" or "Building")
in the Borough of  Manhattan  , City of New York, for the term of fifteen (15) years
(or until such term shall sooner cease and expire as hereinafter provided) ~~to commence on the~~
~~day of~~ ~~nineteen hundred and~~ ~~, and to end on the~~
~~day of~~ ~~nineteen hundred and ,~~
~~both dates inclusive, at an annual rental rate of~~ at the Basic Monthly Rent and additional
rent set forth in the Rider hereto

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first  monthly installment(s) on the execution hereof (unless this lease is a renewal).

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby convenant as follows:

**Rent**  1.  Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy**  2.  Tenant shall use and occupy demised premises for  see rider annexed

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:**  3.  Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within ten days thereafter, at Tenant's expense, by filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner in Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs**  4.  Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. The provisions of this article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in article 9 hereof.

**Window Cleaning:**  5.  Tenant shall not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:**  6.  Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and

being located at
*/500 West 43rd Street, Suite 39 A, New York, New York 10036

or which shall or might subject Owner to any liability or responsibility to any person or for any property damage

regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time, carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Sub-ordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be selfoperative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed in-surance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by Counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner, subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to

*[marginal rotated text:]* all compensation awarded for any such taking or dending or demised shall be the property of Owner. Tenant hereby assigns to Owner all rights with respect to Owner. Tenant may claim for usual tenant claiming such

Tenant given within 90 days after such fire or casualty specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also, provided that such a policy can be obtained without additional premiums. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting. **(See Rider)**   *by operation of law *or otherwise

**Electric Current:** 12. Rates and Conditions ... to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times it use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are within the walls. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the

☞ Rider to be added if necessary.

ight to enter the demised premises at reasonable hours for the purpose of howing the same to prospective purchasers or mortgages of the building, nd during the last six months of the term for the purpose of showing the ame to prospective tenants and may, during said six months period, place pon the premises the usual notice "To Let" and "For Sale" which notices enant shall permit to remain thereon without molestation. If Tenant is not resent to open and permit an entry into the premises, Owner or Owner's gents may enter the same whenever such entry may be necessary or per- nissible by master key or forcibly and provided reasonable care is exercised o safeguard Tenant's property and such entry shall not render Owner or its gents liable therefor, nor in any event shall the obligations of Tenant ereunder be affected. If during the last month of term Tenant shall have emoved all or substantially all of Tenant's property therefrom, Owner may mmediately enter, alter, renovate or redecorate the demised premises vithout limitation or abatement of rent, or incurring liability to Tenant for ny compensation and such act shall have no effect on this lease or Tenant's bligations hereunder. Tenant shall have the right at any time, without the ame constituting an eviction and without incurring liability to Tenant herefor to change the arrangement and/or location of public entrances, assageways, doors, doorways, corridors, elevators, stairs, toilets, or other ublic parts of the building and to change the name, number or designation y which the building may be known.

**Vault,**
**Vault Space,**
**Area:**
14.  No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or in- dicated on any sketch, blue print or plan, or anything con- ained elsewhere in this lease to the contrary notwithstanding. Owner makes o representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be evoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Ten- ant.

**Occupancy:**
15.  Tenant will not at any time use or occupy the de- mised premises in violation of Articles 2 or 37 hereof, or of, the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:**
16. (a)  Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the com- mencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to posses- sion of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the pro- visions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference be- tween the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demise premises for the same period. In the computation of such damages the difference be- tween any installment of rent becoming due hereunder after the date of ter- mination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four per cent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such li- quidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the pro- ceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference refer- red to above.

**Default:**
17.  (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become va- cant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be re- jected under Section 365 of Title II of the U.S. Code (Bankruptcy Code) or if Tenant shall fail to move into or take possession of the premises within fifteen (15) days after the commencement of the term of this lease, of which

fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written five (5) days notice upon Tenant specifying the nature of said default and upon the expiration of said five (5) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said five (5) day period, and if Tenant shall not have diligently commenced curing such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written three (3) days notice of cancellation of this lease upon Ten- ant, and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the pay- ment of the rent reserved herein or any item of additional rent herein men- tioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**
18.  In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration. (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or other- wise, for a term or terms, which may at Owner's option be less than or ex- ceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or convenated to be paid and the net amount, if any, of the rents collected on account of the subse- quent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such li- quidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, at- torneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threat- ened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equi- ty. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and**
**Expenses:**
19.  If Tenant shall default in the observance or per- formance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, then, unless otherwise provid- ed elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees in instituting, prosecuting or defending any actions or pro- ceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within five (5) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.
\*including but not limited to consultations

**No Repre-**
**sentations by**
**Owner:**
20.  Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are

*[Left margin vertical text:]* demised premises or for

*[Right margin vertical text, rotated:]* at law may retain as liquidated

*[Center vertical text, rotated:]* and Owner in addition to the other rights and remedies it may have under this lease or

*[Lower left margin vertical text:]* if Tenant shall be in default under any other lease between Owner

*[Right margin vertical text near bottom, rotated:]* Owner's right to Preferred rent and re-renting at the higher preferred rent rate during any period of Tenant's default

acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21.   Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22.   Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23.   If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession) until after Owner shall have given Tenant written notice that the premises are substantially ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises prior to the date specified as the commencement of the term of this lease. Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24.   The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by owner of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25.   It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.

**Inability to Perform:** 26.   This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption in connection with a National Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27.   Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises address to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28.   If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measures Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner as additional rent, on the first day of each month,       %

($       ) of the total meter charges, as Tenant's portion. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29.   Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company. Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $       , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Heat, Cleaning:** 30.   ~~As long as Tenant is not in default under any of~~ ~~the covenants of this lease Owner shall, if and insofar as~~ ~~existing facilities~~ permit furnish heat to the demised premises, ~~when and~~ as required by law, on business days from 8:00 a.m. ~~to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m.~~ Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction of Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall ~~pay to Owner the cost of removal of any of Tenant's refuse and rubbish~~ ~~from the building. Bills for the same shall be rendered by Owner to Tenant~~ ~~at such times as Owner may elect and shall be due and payable when~~

☞   Space to be filled in or deleted.

render it, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** ~~31. Tenant has deposited with Owner the sum of~~ ~~$~~ as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. **in the printed form and Rider**

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the ~~land and building~~ (or the Owner of a lease of the building ~~or of the land and building~~) of which the demised premises form a part, so that in the event of any sale or sales of said ~~land and building~~ or of said lease, or in the event of a lease of said ~~building, or of the land and~~ ~~building,~~ the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the ~~building, or of the land and~~ ~~building,~~ that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business day" as used in this lease shall exclude Saturdays (except such portion thereof as is covered by specific hours in Article 30 hereof), Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to N.Y.A.C. service.   ***Condominium Unit**

**Adjacent Excavation— Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the

☞ Space to be filled in or deleted.

same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within ten (10) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. ~~Owner may in-~~ ~~sure, and keep insured,~~ in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so-called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.

40. See Rider annexed for paragraphs 41 through 83

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

.............................

577-10 REALTY COMPANY.................. [CORP. SEAL]

BY: _____ [L.S.]
(Name) JOE STAECHKO
(Title) Managing PARTNER

Witness for Tenant:

.............................

ANUJ-RANI WEST SIDE LLC [CORP. SEAL]

BY: _____ [L.S.]
(Name) ANUJ THUKRAL
(Title)

Tenant

business

ACKNOWLEDGMENTS

**CORPORATE OWNER**
STATE OF NEW YORK,    ss.:
County of

On this        day of        , 19    , before me

personally came
to me known, who being by me duly sworn, did depose and say that he resides

in

that he is the        of

the corporation described in and which executed the foregoing instrument, as
OWNER: that he knows the seal of said corporation; that the seal affixed to said in-
strument is such corporate seal; that it was so affixed by order of the Board of Direc-
tors of said corporation, and that he signed his name thereto by like order.

................................................

**INDIVIDUAL OWNER**
STATE OF NEW YORK,    ss.:
County of

On this        day of        , 19    , before me

personally came

to me known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instrument and
acknowledged to that        he executed the same.

................................................

**CORPORATE TENANT**
STATE OF NEW YORK,    ss.:
County of

On this        day of        , 19    , before me

personally came
to me known, who being by me duly sworn, did depose and say that he resides

in

that he is the        of

the corporation described in and which executed the foregoing instrument, as TEN-
ANT; that he knows the seal of said corporation; that the seal affixed to said instru-
ment is such corporate seal; that it was so affixed by order of the Board of Directors
of said corporation, and that he signed his name thereto by like order.

................................................

**INDIVIDUAL TENANT**
STATE OF NEW YORK,    ss.:
County of

On this        day of        , 19    , before me

personally came

to me known and known to me to be the individual
described in and who, as TENANT, executed the foregoing instrument and
acknowledged to that        he executed the same.

................................................

## RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE
### IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules,
stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or
used for any purpose other than for ingress to and egress from the demised premises
and for delivery of merchandise and equipment in a prompt and efficient manner
using elevators and passageways designated for such delivery by Owner. There shall
not be used in any space, or in the public hall of the building, either by any tenant or
by Jobbers, or others in the delivery or receipt of merchandise, any hand trucks ex-
cept those equipped with rubber tires and safeguards.

2. If the premises are situated on the ground floor of the building, Tenant
thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of
said premises clean and free from ice, snow, etc.

The water and wash closets and plumbing fixtures shall not be used for any
purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept any foul or noxious gas
or substance in the demised premises, or permit or suffer the demised premises to be
occupied or used in a manner offensive or objectionable to Owner or other oc-
cupants of the building by reason of noise, odors and/or vibrations or interfere in
any way with other Tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed,
painted or affixed by any Tenant on any part of the outside of the demised premises
or the building or on the inside of the demised premises if the same is visible from the
outside of the premises without the prior written consent of Owner, except that the
name of Tenant may appear on the entrance door of the premises. In the event of the
violation of the foregoing by any Tenant, Owner may remove same without any
liability and may charge the expense incurred by such removal to Tenant or Tenants
violating this rule. Signs on interior doors and directory tablet shall be inscribed,
painted or affixed for each Tenant by Owner at the expense of such Tenant, and
shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the
demised premises or the building of which they form a part. No boring, cutting or
stringing of wires shall be permitted, except with the prior written consent of Owner,
on the exterior of the Building.

and as Owner may direct. No Tenant shall lay linoleum, or other similar floor cover-
ing, so that the same shall come in direct contact with the floor of the demised
premises, and if linoleum or other similar floor covering is desired to be used an in-
terlining of builder's deadening felt shall be first affixed to the floor, by a paste or
other material, soluble in water, the use of cement or other similar adhesive material
being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any
description shall be delivered to and removed from the premises only on the freight
elevators and through the service entrances and corridors, and only during hours and
in a manner approved by Owner. Owner reserves the right to inspect all freight to be
brought into the building and to exclude from the building all freight which violates
any of these Rules and Regulations or the lease of which these Rules and Regulations
are a part.

8. Owner reserves the right to exclude from the building between the hours of 6
P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not
present a pass to the building signed by Owner. Owner will furnish passes to persons
for whom any Tenant requests same in writing. Each Tenant shall be responsible for
all persons for whom he requests such pass and shall be liable to Owner for all acts of
such persons.

9. The Owner shall have the right to prohibit any advertising by any Tenant which, in
Owner's opinion, tends to impair the reputation of Owner or its desirability as a
building for stores or offices; and upon written notice from Owner, Tenant shall
refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised
premises, any inflammable, combustible or explosive fluid, material, chemical or
substance, or cause or permit any odors of cooking or other processes, or any
unusual or other objectionable odors to permeate in or emanate from the demised
premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding
the floor load per square foot area which it was designed to carry and which is al-
lowed by law. Owner reserves the right to prescribe the weight and position of all
safes, business machines and mechanical equipment. Such installations shall be plac-
ed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's
judgement to absorb and prevent vibration, noise and annoyance.

### GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns,
the full performance and observance of all the agreements to be performed and
observed by Tenant in the attached Lease, including the "Rules and Regulations" as
therein provided, without requiring any notice to Guarantor of nonpayment or,
nonperformance, or proof, or notice of demand, to hold the undersigned responsible
under this guaranty, all of which the undersigned hereby expressly waives and ex-
pressly agrees that the legality of this agreement and the agreements of the Guarantor
under this agreement shall not be ended, or changed by reason of the claims to
Owner against Tenant of any of the rights or remedies given to Owner as agreed in
the attached Lease. The Guarantor further agrees that this guaranty shall remain and

continue in full force and effect as to any renewal, change or extension of the Lease.
As a further inducement to Owner to make the Lease Owner and Guarantor agree
that in any action or proceeding brought by either Owner or the Guarantor against
the other on any matters concerning the Lease or of this guaranty that Owner and the
undersigned shall and do waive trial by jury.

.......................................................... Guarantor

**STANDARD FORM OF**

**Store Lease**

Address

Premises

TO

The Real Estate Board of New York, Inc.
©Copyright 1979. All Rights Reserved.
Reproduction in whole or in part prohibited.

Dated                    19

Rent per Year

Rent per Month

Term
From
To

Drawn by .......................    Checked by ..................

Entered by .....................    Approved by .................

RIDER ATTACHED TO AND FORMING PART
OF LEASE DATED AS OF DECEMBER 3/ , 2007
BETWEEN
577-10 REALTY COMPANY, AS OWNER,
AND
ANUJ-RANI WEST SIDE LLC, AS TENANT

40. <u>Conflicts</u>.   If there is any conflict between any
of the provisions of this Rider and any of the printed terms of
this Lease, this Rider shall control.

41. <u>No Representations</u>.  Tenant acknowledges that no
representations, warranties, inducements or conditions of any
kind have been made by Owner or by any broker or other person or
firm acting or purporting to act on behalf of Owner in connection
with this Lease, except as expressly set forth herein.

42. <u>Condominium</u>.  Owner has advised Tenant that the
demised premises constitute part of a separate condominium unit
in a condominium regime and, accordingly, this Lease shall be
subject and subordinate to (i) the Declaration of Condominium of
The Strand Condominium, 500 West 43rd Street, New York, New York
10036, recorded in the office of the Register of the City of New
York, County of New York (the "Declaration") and (ii) the By-Laws
of the Strand Condominium, 500 West 43rd Street, New York, New
York 10036, recorded in said Register's office (the "By-Laws"),
as the same may from time to time be amended.  This clause shall
be self-operative and no further instrument of subordination

-1-

shall be required by the Board of The Strand Condominium (the Condominium Board") 500 West 43rd Street, New York, New York 10036.  In confirmation of such subordination Tenant shall promptly execute and deliver any certificate or instrument that Owner may request.  The terms, conditions and provisions of the Declaration and By-Laws shall be determined in the sole reasonable discretion of the Condominium Board.

43. _Commencement Date_.  The demised premises shall be deemed to have been delivered and the term of this Lease shall commence on January 1, 2008, ( said date being hereinafter referred to as the "Commencement Date") and shall terminate on December 31, 2022.

44. _Basic Monthly Rent_.  (a)  The  term "Lease Year" as used in this _Paragraph 44_ shall mean each successive twelve (12) month period commencing on the first day of the calendar month immediately following the Commencement Date.

(b) Tenant shall pay to Owner beginning on the Commencement Date basic monthly rent (the "Basic Monthly Rent") payable monthly in advance for the demised premises as hereinafter provided.  If the Commencement Date is a date other than the first day of a month the Basic Monthly Rent for such month shall be apportioned.  The annual and monthly payments of Basic Monthly Rent is set forth on _Schedule A_ annexed hereto and made part hereof.

(c) Except as otherwise expressly provided all terms of rent and additional rent or other Tenant obligations shall commence to accrue on The Commencement Date.

(d) Tenant may occupy the Demised Premises free of any obligation to pay any rent or additional rent for the period January 1, 2008, through March 15, 2008.

45. _Taxes_. (a) (i) For the purposes of this paragraph:

(A) The term "Taxes" shall mean the real estate taxes, water and sewer rents and assessments imposed solely upon the demised premises. If at any time during the term of this Lease the methods of taxation prevailing on the date hereof shall be altered so that in lieu of; or as an addition to, or as a substitute for, the whole or any part of such real estate taxes, water and sewer rents and assessments and special assessments now imposed on real estate, there shall be levied, assessed or imposed (x) a tax assessment, levy, imposition, license fee or charge wholly or partially as a capital levy or otherwise on the rents received therefrom, or (y) any other additional or substitute tax, assessment, levy, impositions, fees or charges then all such taxes, assessments, levies impositions, fees or charges shall be deemed to be included within the term "Taxes" for the purpose hereof.

(B) The term "Base Tax Year" shall mean the Tax Year beginning on July 1, 2007, and ending June 30, 2008.

-3-

(C) The term "Base Taxes" shall mean the Taxes for the Base Tax Year, taking into account any future reduction in the Base Taxes which may be brought about by an appropriate proceeding or otherwise.

(D) The term "Tax Year" shall mean the period of twelve (12) calendar months beginning July 1st .

(E) The term "Tenant's Share" or Tenant's Proportionate Share" shall mean Twenty Two and 00/100 (22.00%) percent of any obligation attributable to the Unit.

(F) The Unit (which is a commercial condominium) of which the demised premises form a part, consists of five (5) store and is the "Tax Lot" known as Block 1071, Lot 1002.

(ii) If the Taxes for any Tax Year during the term of this Lease commencing after the Base Tax Year shall exceed the Base Taxes, Tenant shall pay for such Tax Year, an amount ("Tax Payment") equal to the Tenant's Share of such excess. If a Tax Year ends after the expiration or termination of the term of this Lease, the Tax Payment therefore shall be prorated to correspond to that portion of such Tax Year occurring within the term of this Lease. If the real estate fiscal tax year of the municipality (or other applicable taxing authority in which the demised premises are located) shall be changed during the term of this Lease, any Taxes for a real estate fiscal tax year, a part of which is included within a particular Tax Year and a part

-4-

of which is not so included, shall be apportioned on the basis of the number of days in the real estate fiscal tax year included in the particular Tax Year for the purpose of making the computations under this Paragraph.

(iii) Provided that no such demand will be made more than thirty (30) days prior to the date any Taxes are due, the entire Tax Payment shall be payable by Tenant within twenty (20) days after written demand.  If the aggregate payment on account of the Tax Payment in any Tax Year shall exceed the Tax Payment for that Tax Year, the excess shall be applied by Owner against the next due installments of Tax Payments from Tenant (unless said aggregate payment on account of taxes for the last year of the term of this Lease, in which case said excess shall be paid to Tenant); and if the Tax Payment for any Tax Year shall exceed the payments on account of the Tax Payment, the excess shall be promptly paid by Tenant upon demand of Owner made at any time after the end of such Tax Year.  If any institutional lender with a mortgage on the demised premises requires the establishment of an escrow account for Taxes that is based upon any other reasonable method of calculation and payment, Tenant shall make its Tax Payments in a manner consistent with such lender's reasonable requirements.  Nothing herein contained shall prohibit Tenant from  electing to escrow Taxes and the Tenant from making estimated Tax payments in advance except that Owner shall not pay

Tenant any interest on such Tax escrow.

(iv) Owner reserves the right to bring an appropriate proceeding to reduce the Base Taxes and/or the taxes for any subsequent Tax Year. Any settlement of such proceeding (s) by Owner shall be with the intention of obtaining the lowest possible assessed value for the Condominium Unit. If in any year Owner does not contest the tax assessment with respect to the Condominium Unit, Tenant may, at its sole cost and expense, bring a proceeding for such purpose on behalf of Owner, and with counsel reasonably satisfactory to Owner, and Owner shall cooperate with Tenant in the bringing of any such proceeding provided that Owner shall incur no expense in doing same. Tenant shall not settle any such proceeding without Owner's prior written approval, which approval shall not be unreasonably with-held or delayed.

(v) If Owner shall receive a refund of the Taxes for any Tax Year occurring after the end of the Base Tax Year, Owner shall pay the amount of said refund to Tenant (after deducting from such total refund the costs and expenses of obtaining same); provided, however, such payment to Tenant shall in no event exceed Tenant's Tax Payment actually paid for such Tax Year.

46. Utilities and Maintenance Charges; Additional Rent: (a) Tenant shall obtain a separate meter to the demised premises from Consolidated Edison Company of New York and Tenant shall pay

-6-

for all electrical and utility service.  From the Commencement Date of this Lease Owner shall have no obligation to provide any utilities, including without limitation, electricity, air-conditioning or hot water to the demised premises.

(b) During the heating season, heat for the Premises is furnished twenty four (24) hours a day, seven (7) days a week, by the Condominium Board.

(c)  Tenant shall reimburse Owner, for Tenant's Proportionate Share (Twenty Two and 00/100 [22%] per cent) of any increase in the maintenance  charge for the demised premises in excess of the common charges for demised premises in effect on the Commencement Date.  Currently, the monthly common charges for the Tax Lot is FOUR HUNDRED EIGHTY SIX and 80/100 ($486.80) DOLLARS and any special or general assessments charged against the demised premises.

(d) Tenant shall be responsible for making arrangements for the removal and carting of its refuse garbage and and shall make arrangements with an authorized commercial refuse company to remove its refuse and garbage.  Tenant shall not leave its refuse or garbage on the sidewalk outside the demised premises, except for a reasonable time before "pick up" and will not in anyway interfere with the operation of the Condominium.

(e)  Tenant shall pay any amount due under this Section 46 monthly or in one (1) payment, as the case may be, upon

-7-

receipt of a statement and shall pay the same as rent and additional rent and the Owner shall be entitled to the same remedies in collection of the same as in the collection of Basic Monthly Rent.

47. <u>Liability Insurance</u>. (a) During the term hereof Tenant shall, at its own cost and expense, provide and keep in force for the mutual benefit of Owner and Tenant, comprehensive general public liability insurance against claims for bodily injury, death or property damage occurring in or about the demised premises including, without limitation, bodily injury, death or property damage resulting directly from any change, alteration, improvement or repair thereof), with limits of not less than $1,000,000.00, for bodily injury or death to any one person and not less than 3,000,000.00, for bodily injury or death to any number of persons in connection with any one accident or occurrence, and with limits of not less than $500,000.00, for property damage in connection with any one accident or occurrence.

(b) Provided the same can be obtained without additional cost, all insurance to be provided and kept in force by Tenant pursuant to <u>Subparagraph 47 (a)</u> hereof shall name as the insured, Owner and Tenant as their respective interests may appear and shall name as additional insureds: the Condominium Board, the current managing agent of the residential condominium

-8-

and each officer and director thereof, Joe Stareshefsky and 577-
10 Realty Company, in addition, at Owner's request, the
insurance described in Subparagraph (a) above, shall name as an
additional insured, the holders of any mortgages affecting the
demised premises.  Such insurance shall provide that as to the
interest of Owner, the same shall not be invalidated by any act
or omission of Owner, any mortgagees, Tenant or any occupant of
the demised premises.  Said policies  shall be in force and fully
paid for by Tenant and a certificate  of insurance, shall be
delivered to Owner before Tenant takes possession of the demised
premises.  Said policies shall be  issued by responsible
companies of recognized responsibility licensed to do business in
the State of New York and reasonably satisfactory to Owner.  Said
policies shall be for a period of not less than one (1) year and
shall contain a provision whereby the same cannot be canceled or
modified unless the mortgagees and Owner are given at least
thirty (30) days prior written notice of such cancellation or
modification, if available.  Tenant shall procure and fully pay
for renewals of such insurance from time to time at least thirty
(30) days before the expiration thereof, and Tenant shall
promptly deliver to Owner a certificate of insurance of such
renewal policies.  In the event that Tenant fails to make such
delivery on or before the Commencement Date, or at least fifteen
(15) days prior to the expiration date of any current policy or

to maintain such insurance and pay the premiums therefore, Owner upon giving Tenant seven (7) days prior written notice such failure shall have the right to cause such insurance policy to be issued and to pay the premiums therefore. In such event, the cost thereof shall be added to the installment of fixed annual rent payable on the next monthly rent payment date and Tenant hereby agrees to pay at that time the installment of fixed annual rent and such additional rent then due.

(c) In respect of all real, personal or other property owned by Tenant or other persons and located in, at or upon demised premises, Tenant hereby releases Owner from any and all liability or responsibility to it or anyone claiming by, through or under it by way of subrogation or otherwise, for any loss or damage to said property caused by fire or any of the extended coverage casualties, even if fire or other casualty shall have been caused by the fault of Owner or anyone for whom Owner may be responsible, (other than their negligence or willful misconduct), provided, however that this release shall be applicable and in force and effect only with respect to loss or damage occurring during such time as Tenant's policies of insurance shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the right of any insured to recover there-under. Tenant agrees that it will request the insurance carriers to include in its

-10-

policies such a clause or endorsement, and Tenant shall pay the cost therefor, but Tenant shall not be required to pay a premium in excess of the usual premium paid for such coverage.

(d) Owner may, from time to time, require that the amount of public liability insurance to be provided and kept in force by Tenant under Subparagraph (a) be increased by an amount which, in Owners reasonable judgement, conforms to the then prevailing rates of increase of such insurance coverage for similar tenant operations.

48.    Permits and Licenses.   Tenant shall obtain all licenses, permits or certificates required by reason of the use and occupancy of the demised premises as provided in Paragraph 2 above, in accordance with applicable law, regulation, ordinance or code.  Such licenses, permits or certificates, if any, that are required, shall be maintained in full force and effect at all times during the term of this Lease, at Tenant's sole cost and expense.  If any application for such license, permit or certificate is required to be executed by Owner for any of the foregoing purposes, Owner shall execute the same if Owner thereby incurs no expense or liability in connection therewith.

49.    Advances Made for Tenant.   Tenant shall repay to Owner any sum of money which Owner shall pay or the cost of any performance by Owner because of the failure to Tenant to perform any one or more of the other provisions or conditions in this

-11-

Lease on the part of Tenant to be performed or observed, and
Tenant shall have failed to perform or observe such provisions or
conditions.  No such payment or performance by Owner shall excuse
or discharge Tenant's failure to perform or shall be a  waiver of
any of Owner's rights with respect to such failure to perform or
to insist on strict performance at any time thereafter.  The sum
or sums so paid by Owner together with interest at the rate of
18% per annum or the maximum legal rate, whichever is less, and
all costs, damages and reasonable counsel fees actually incurred
by Owner, shall be payable by Tenant as additional rent with the
next installment of fixed annual rate then falling due.

50.    Additional Rent. All additional rent and other
charges payable under this Lease, including, without limitation,
the payment described in Paragraph 42, shall be paid without any
setoff or deduction except as otherwise expressly provided
herein.  Owner shall have the same rights and remedies for the
nonpayment of additional rent and other charges under this Lease
as for nonpayment of Basic Monthly Rent.

51.    Premises "As Is". Tenant agrees to accept the
demised premises in the "AS IS" condition on the date hereof, and
Owner shall not be obligated to perform any work, pay any costs,
render or supply any labor, services, equipment, materials,
decorations, fixtures or furnishing to prepare the Premises for
Tenant's occupancy.  Any additional work or improvements required

-12-

to be made in or to  the demised premises by this Lease or by any
Federal, State or local laws or ordinances shall be done by and
at the sole expense of the Tenant.  By its execution of the
Lease, Tenant shall be  deemed to have represented and
acknowledged to Owner that Tenant (i) is satisfied that the use
to which Tenant intends to put the demised premises is permitted
under the Certificate of Occupancy,  which Tenant has approved,
and (ii) has inspected the demised premises, and the streets,
sidewalks, curbs, utilities and access ways contiguous to or
adjoining the same, that the same are in all ways acceptable to
Tenant for use of the demised premises by Tenant pursuant to this
Lease, in the condition or state in which they are then found,
and that, except for Owner's express obligation set forth in this
Lease, Owner has made no express or implied warranty,
representation or covenant to or with Tenant with respect to the
same.  Except for Owner's Work, if any, more particularly set
forth on Schedule X annexed, Tenant hereby acknowledges that the
demised premises are in the condition called for hereunder and
agrees that the obligations of Owner imposed for the delivery of
the demised premises have been fully performed.

    52. <u>Tenant's Work</u>. (a) Tenant shall do all other work
necessary to prepare the demised premises for Tenant's use
("Tenant's Work").  In the event that any of Tenant's Work shall
require structural changes and which shall be required  for

compliance with the New York City Building Codes, it shall be done by workers who are Union members and, to the extent feasible, members of the same locals to which the existing workers at the Building site belong.

(b) Tenant shall, at its sole cost and expense, obtain all governmental licenses, approvals, and permits for the operation of Tenant's business in the demised premises and shall not undertake any work, other than Tenant's Work, or make any applications to the Building Department in respect to the demised premises without Owner's prior written approval, not to unreasonably withheld or delayed. Landlord will cooperate with Tenant and will sign all documents required to be signed by Landlord, so long as by signing such documents, Landlord incurs no expense or obligation.

(c) If any mechanic's lien is filed against the demised premises, or the Building of which the same forms a part, for work claimed to have been done, or material furnished in connection with the performance of Tenant's Work, Tenant shall within five (5) business days of the filing of such lien, undertake and expeditiously move to discharge the same, at Tenant's expense, by filing the bond required by law or by depositing the amount of the lien required with the county clerk. Failure to discharges such lien within the aforesaid five (5) business days shall constitute a default under this Lease.

-14-

(d) Tenant shall, at its sole cost and expense, furnish Owner with construction drawings for any Tenant Work, other than decorative work, business fixtures, etc., for Owner's approval. If Owner shall require any changes, the same shall be made by Tenant, at Tenant's sole cost and expense, and re-submitted to Owner within three (3) business days after Tenant receives Owners comments. This procedure shall be followed until Tenant and Owner have agreed to the construction drawings.

(e) Tenant's inability to obtain approval of the Building Department for its work or issuance of a Certificate of Occupancy shall not be grounds for termination of this Lease.

53. <u>Repairs and Maintenance</u>. (a) (i) Owner shall cause the exterior walls of the Condominium Unit, and the structural portions of the demised premises to be maintained. Tenant, not Landlord shall be responsible for the maintenance any doors, windows and glass which are part of the demised premises, which shall remain the obligation of the Tenant.

(ii) Tenant acknowledges that (A) all utility lines, mechanical systems and plumbing running through the demised premises which serve parts of the Building other than the demised premises and (B) the structural maintenance of the demised premises, are both the responsibility of the Board of Managers of the Condominium and Tenant shall look solely to such Board of Managers to maintain the structural integrity of the demised

premises, provided that Tenant shall give Owner and Board of Managers written notice of the necessity for any such repairs, and provided that the damage  thereto shall not have been caused by Tenant, its agents, servants, contractors, or employees, in which event Tenant shall be responsible therefor and shall promptly repair or replace the same.  Throughout the term of this Lease all other alterations, installations and changes to the demised premises required by any laws or regulations shall be the sole responsibility of Tenant, unless the same are the express obligation by the Owner.  Except as herein expressly provided, Owner shall be under no liability for repair or maintenance or replacement of the demised premises, or any part thereof; nor shall Owner be under any liability to repair or maintain or replace any electrical, plumbing, heating, or other mechanical installation in the demised premises, including but not limited to the HVAC system, unless the same is a latent defect.

(b)  Owner reserves the right on behalf of the Condominium Board to stop, reduce or interrupt (such stoppage, reduction or interruption is hereinafter referred to as a "stoppage") the service of electricity, water, heat, or any other utilities, facilities or services required to be furnished to the demised premises, for the purpose of making repairs or improvements in the Condominium Unit.  In the event of a stoppage (i) Owner shall not be liable to Tenant for damages or otherwise whether the

stoppage was caused by the making of repairs or improvements, the requirements of the Condominium Board, strikes, accidents, orders or regulations of any federal, state or municipal authority, failure of suitable fuel supply or any other cause, and (ii) Tenant shall not be released or excused from the performance of any of its obligations under this Lease, for any failure, interruption or curtailment of any such utilities, facilities or services, for any reason whatsoever, and no such failure, interruption or curtailment shall constitute a constructive or partial eviction.  Notwithstanding anything herein to the contrary, (i) in the event of any stoppage, Tenant shall not be entitled to any damages or to bring any claim against Owner and Owner shall not be liable in any way or manner to Tenant, unless otherwise specifically provided herein; and (ii) in the event of any stoppage made necessary due to the negligent or wrongful act(s) or omission(s) of Tenant, or Tenant's agents, employees, contractors or invitees, Tenant shall not be entitled to any rent abatement irrespective of the duration or severity of such stoppage.

(c) Tenant shall keep (i) the signs, doors, windows and other glass, if any, (ii) the interior of the demised premises, together with the HVAC unit, the plumbing fixtures, electrical outlets, bulbs, fixture and equipment, other than the electrical, plumbing, heating and other mechanical installations in the

-17-

demised premises, or servicing the demised premises, except specifically maintained by the Condominium Board, in good order, repair and replacement; and promptly replace plate glass, if any, which may be broken or damaged with glass of like kind and quality; and maintain and keep in good order and repair (except for structural repairs which shall be the Owner's obligation unless the necessity for such repairs are caused by Tenant or its agents, servants, employees, invites or clients, in which event Tenant shall make such repairs), and surrender the demised premises at the expiration of the term in as good condition as when received, except for ordinary wear and tear and damage by fire or other casualty specifically included in the extended coverage endorsement to Tenant's or Owner's fire insurance policies. Tenant will not install any additional electrical wiring or plumbing (except as the same as part of Tenant's Work pursuant to Paragraph 48 hereof), unless it has first obtained Owner's written consent thereto, not to be unreasonably withheld or delayed, and if such consent is given, Tenant will install the same at its own expense and Tenant will repair promptly, at its own expense, any damage to the demised premises caused as a result of Tenant bringing into the demised premises any property for Tenant's use, or by the installation, use or removal of such property, regardless of fault or by whom such damage shall be caused unless caused by Owner, its agents, employees or

-18-

contractors.

(d) Tenant, at its sole cost and expense, shall cause the demised premises, including the exterior and interior windows thereof, to be cleaned. Tenant shall retain all trash and garbage in the demised premises in a sanitary and secure manner and shall, at Tenant's sole cost and expense, arrange to carry such trash to the street in front of the building of which the demised premises form a part only on the days and dates and in areas designated by Owner's carting service when such trash is to be picked up by such carting company. Tenant shall be responsible for paying any garbage removal or collection fees, and shall be liable for any cost expenses or summons issued as a result of Tenant placing its trash in the street on days when trash is not collected or if in any manner the trash is the cause of any such violation.

(e) If Tenant shall fail to promptly commence and to diligently proceed to make and complete any repairs or perform any obligation imposed upon it by the preceding paragraphs within five (5) business days after receiving written notice from Owner to make such repair or perform such obligation, or without notice in the event of an emergency, then and in such event Owner may, at its option, enter the demised premises and do and perform the things specified in said notice, or required to be performed by Tenant if no notice is given, without any liability on the

-19-

part of Owner for any loss or damage resulting from any such action by Owner, (except for Owner's negligence) and Tenant agrees to pay promptly upon demand, as additional rent, any reasonable cost or expense incurred by Owner in taking such action.  Owner agrees, after receipt of written notice from Tenant, to make such repairs which it is required to perform hereunder as promptly as reasonably possible under the circumstances, but in no event later than seven (7) days after the delivery of such notice.

54. Operation of Demised Premises. (a) At all times during the term of this Lease, Tenant will conduct its business in the demised premises in keeping with its location in a luxury apartment dwelling and with due and reasonable care and observance of the rights and interests of the professional and residential occupants of the building and, particularly, Tenant will avoid and promptly abate any and all offensive odors, noises and nuisances caused or resulting from the conduct of its business which may interfere with or impair the rights and interest of such occupants.

(b) Subject to Tenant's reasonable security procedures, Tenant shall provide unrestricted access to the demised premises, on a daily basis, to the employees of the Condominium Board and/or to persons performing maintenance, delivery, garbage disposal, or other services in connection with the occupancy

and/or operation of the Building.  Such access shall be provided without fee or charge and Tenant shall not interfere with the performance of such services in any respect during the Term of this Lease, nor shall such unrestricted access cause unreasonable disruption of Tenant's business or operations.

55.  <u>Indemnity</u>  Tenant covenants and agrees, at its sole cost and expense, to indemnify and hold harmless Owner and the holder of any mortgage affecting the demised premises against and from any and all claims by or on behalf of any person, firm or corporation, arising or in connection with:

(a) the conduct or management of, and the payment for, any work or  thing whatsoever done in or about the demised premises by or on behalf of Tenant (or any person holding or claiming through or under Tenant) during the term of this Lease;

(b) the condition of the demised premises during the term of this Lease, or any use, by Tenant, possession, management or maintenance of the demised premises;

(c) any breach or default on the part of Tenant in the performance of any of Tenant's covenants or obligations under this Lease;

(d) any act, negligence or fault of Tenant, or any of its agents, servants, employees, contractors, invites or licensees, or of any person holding or claiming through or under Tenant;

(e) any accident, injury or damage whatsoever or howsoever caused to any person, firm or corporation occurring during the demised term, in or about the demised premises;

(f) except any event caused by Owner or its employees, any costs and expenses paid or incurred by Owner or by the holder of any mortgage affecting the demised premises in obtaining possession of the demised premises after default by Tenant or upon the expiration or earlier termination of this Lease, or in enforcing any of Tenant's obligations hereunder, provided such event or action are made in a reasonably acceptable manner. Further, Tenant agrees to indemnify and hold harmless Owner and any such mortgagee against and from all reasonable costs, which shall include counsel fees, expenses and liabilities incurred in or about any such claim and any action or proceeding brought there-on; and in case any action or proceeding shall be brought against Owner by any reason of any such claim, Tenant upon notice from Owner agrees to resist or defend such action or proceeding (by counsel reasonably satisfactory to Owner) unless Tenant causes the same to be promptly discontinued.

56. <u>Broker</u>.  The parties represent and warrant, each to the other party, that neither communicated or negotiated with or through any broker, except Dumann Realty ("Broker") with regard to this Lease and each party agrees to indemnify and save the other party harmless from any claim, action or proceeding for

-22-

a commission or other compensation made or brought against the other party by any broker claiming or alleging to have communicated or negotiated with or on behalf of such party in connection with this Lease and from any cost or expense in connection with any such claim, action or proceeding (including, without limitation, reasonable counsel fees). Owner agrees to pay Broker in accordance with a separate agreement.

57.    Recording.  Tenant shall not record this Lease nor any memorandum thereof without Owner's prior written consent.

58.    Security.

(A)  Letter of Credit.  Unless otherwise approved by Landlord the initial security deposit of Thirty Eight Thousand and 00/100 ($38,000.00) Dollars required under Article 31 hereof shall be in the form of an unconditional, irrevocable letter of credit (the "Letter of Credit") issued or confirmed by a banking organization which is a member of the New York Clearing House Association (or any successor thereto) and which maintains a branch in Manhattan in the amount required by Article 31 hereof, as and for security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this Lease. Following any increase (or escalation) in the Base Rent (a "Change Date"), the amount of the Letter of Credit required pursuant to this Article 58 shall be required to be increased by the same percentage as the percentage increase in the Base Rent.

-23-

Tenant shall be responsible within thirty (30) days of the Change Date to cause the Letter of Credit to be either amended or replaced. If Tenant does not provide a Letter of Credit in the increased amount required by the Lease within such thirty (30) days, Landlord may declare a default of this Lease after giving Tenant an additional five (5) day written notice. The Letter of Credit shall name Landlord (or its successor as Landlord) as beneficiary and authorizing the beneficiary to draw on the bank in said amount, or any portion thereof, available by the sight draft of the beneficiary (which may be executed on behalf of the beneficiary by its agent), without presentation of any other documents, statements or authorizations. The Letter of Credit shall have a term of at least twelve (12) months, and it shall by its terms be renewed, automatically, each year, by the bank, the last renewal of which shall be for a term set to expire not earlier than the date occurring ninety (90) days following the date upon which the term of this Lease expires, unless the bank gives written notice to the beneficiary, at least sixty (60) days prior to the expiration date of the then existing Letter of Credit, that the bank elects that it not so be renewed. The Letter of Credit shall be transferable to a successor Landlord and all transfer fees shall be payable by Tenant. The bank shall further agree with drawers, endorsers, and all bona fide holders that drafts drawn under and in compliance with the terms of the

-24-

Credit will be duly honored upon presentation to the bank at its main office located in New York, New York. The Letter of Credit shall be subject to the International Standby Practices 1998 (ISP98) of the International Chamber of Commerce and matters not governed by ISP98 shall be guided by and construed in accordance with the laws of the State of New York and applicable U.S. Federal law without regard to principles of conflicts of laws.

(B)  Full Security Required. If during the term of this Lease, the Letter of Credit and/or the proceeds of all or part of said Letter of Credit become less than the full amount of the security hereinabove required, then and in such event Tenant shall, upon demand, deposit with Landlord the amount of any security/Letter of Credit theretofore used or applied by Landlord pursuant to the terms hereof in order that Landlord shall have the full security on hand at all times during the term of this Lease. If at the expiration of the term of this Lease, Landlord holds all or part of said Letter of Credit, and Tenant is not in default under any of the terms, covenants and conditions of this Lease, then Landlord will turn over said Letter of Credit to Tenant or assign it to the designee of Tenant.

(C)  Renewal of Letter of Credit. It shall be the obligation of Tenant during the term of this Lease to deliver to Landlord at least sixty (60) days prior to the expiration date of the then existing Letter of Credit, a renewal or extension of

-25-

said Letter of Credit or a substitute Letter of Credit (each fully complying with the foregoing). If for any reason Landlord has not received such renewal or extension or substitute Letter of Credit within sixty (60) days prior to the expiration date of the then existing Letter of Credit, then and in such event Landlord, without any obligation to provide notice to Tenant, shall be free to draw on the Letter of Credit and hold and use and apply the proceeds thereof in accordance with the security deposit provisions of this Lease. In addition, Landlord shall have the right to present the Letter of Credit, draw the full amount thereof and apply the proceeds in the manner set forth in Article 31 hereof if (i) Tenant has defaulted in the payment of Rent or any portion thereof, or any other sum required by the terms of this Lease, or (ii) Tenant has defaulted in the performance or observance of any other covenant or condition of this Lease on the part of Tenant to be performed or observed and has not effected a cure thereof within the applicable notice and grace period, if any; or (iii) Landlord has received a notice from the issuing bank that such bank is not renewing the Letter of Credit for the following twelve (12)-month period. The security/Letter of Credit or any portion thereof may be applied to the curing of any default as aforesaid, without prejudice to any other remedy or remedies which Landlord may have on account thereof Tenant agrees to reimburse Landlord for any reasonable

-26-

attorneys' fees incurred by Landlord, after the commencement of the Lease Term, in connection with reviewing the Letter of Credit and any renewals, extensions or substitutions therefor, ensuring that the provisions of the Letter of Credit and any renewals, extensions or substitutions therefor comply with the provisions of this, drawing down upon the proceeds of the Letter of Credit, or any renewals, extensions or substitution therefor, or ensuring that the security/Letter of Credit is maintained as required under this Lease.  Sums not due Landlord to cure and make the Landlord whole in accordance with the terms of this Lease, shall continue to be held by the Landlord in accordance with the terms of this Lease.

(D)  No Recovery Upon Termination.  The security/Letter of Credit under this Lease shall not be assigned or encumbered by Tenant.  It is expressly understood and agreed that the issuance of a warrant and the re-entering of the Demised Premises by Landlord for any default on the part of Tenant prior to the expiration of the Lease Term shall not be deemed such a termination of this Lease as to entitle Tenant to recovery of the security/Letter of Credit; and security/Letter of Credit shall be retained and remain in the possession of Landlord until the end of the Lease Term, unless otherwise applied by Landlord pursuant to the provisions of this Article 58.

(E) Reduction of Amount of Letter of Credit.  Provided

-27-

this Lease is in full force and effect and Tenant is not then in default in the observance, performance or compliance with its obligations under this Lease (including but not limited to the prompt payment of all Base Rent, additional rent and all sums due hereunder) beyond any applicable notice and cure period, and (i) provided further that Landlord has not previously applied any such security deposit which has not been replaced, in accordance with the provisions of this Article 58, which has not been replaced, then, on the second second (2nd) anniversary of the Rent Commencement Date ("First Reduction Date"), the Security shall be reduced to Twenty Nine Thousand Three Hundred Fifty Five and 00/100 ($29,355.00) Dollars and (ii) provided further that Landlord has not previously applied any such security deposit in accordance with the provisions of this Article 58, then, on the third (2nd) anniversary of the Rent Commencement Date ("Second Reduction Date"), the Security shall be reduced to Twenty Thousand One Hundred Fifty Seven and 00/100 ($20,157.00) Dollars but in no event shall the security deposit be reduced below the amount of Twenty Thousand One Hundred Fifty Seven and 00/100 ($20,157.00) Dollars.  No failure by Tenant to give Landlord a Reduction Notice prior to any of the Reduction Dates shall operate to waive or discharge Landlord's obligation to so reduce the security deposit (if required to do so pursuant to the terms hereof), but Landlord shall have no obligation to reduce the

security deposit until not less than twenty (20) days after Tenant shall give the Reduction Notice with respect to such Reduction Dates.  If Tenant is not entitled to a reduction of the security deposit on either of the Reduction Dates by reason of a default by Tenant, then Tenant will not be entitled to a reduction or further reduction of the security deposit for the balance of the Lease Term.  If the security deposit is in the form of a Letter of Credit and provided that Tenant tenders to Landlord a replacement Letter of Credit or an amendment to the Letter of Credit (which amendment or replacement must meet the applicable requirements of this Article 54) for the appropriately reduced amount of the security deposit, Landlord shall exchange the Letter of Credit then held by Landlord for the replacement Letter of Credit tendered by Tenant, or execute the amendment, as applicable.

(F)  Owner may reimburse itself from the Security if Tenant defaults in respect of any of the terms, provisions and conditions of this Lease, including, without limitation, the payment of fixed annual rent or additional rent.

(G)  Owner may use, apply or retain the whole or any part of the Security so deposited to the extent required for the payment of any fixed annual rent, additional rent or any other sum as to which Tenant is in default in respect of any of the terms, covenants and conditions of this Lease, including, but

not limited to, any reasonable damages or deficiency in the re-letting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner.

(H)  In the event of a sale, transfer or assignment of Owners interest in the demised premises, Owner may transfer the Security,  to the grantee, assignee, or transferee of such interest, provided such grantee, assignee or transferee shall execute and deliver an assumption agreement with respect to the Security, a copy of which shall be furnished to Tenant.  In such event (i) Tenant shall execute, acknowledge and deliver any documents or instruments required to consummate such transfer, (ii) Owner shall thereupon be released by Tenant from all liability for the return of the Security, and (iii) Tenant agrees to look solely  to the new Owner for the return of the Security. The provisions hereof shall apply to every sale, transfer or assignment made of  the Security, to a new Owner.

(I)  Tenant shall not assign or encumber or attempt to assign or encumber the Security and neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

(J)  If Owner shall use, apply or retain the whole or any part of the Security, Tenant shall promptly deposit with Owner an amount equal to the amount so applied, by increasing the

letter of credit or by cash at Tenant's option.  If Tenant shall fail or refuse to do so, Owner shall have the same rights and remedies as for nonpayment of Basic Monthly Rent.

(K)  Upon the termination of this Lease if the Tenant is not then in default of any of the terms, covenant and conditions of this Lease and Owner has not applied the Security to cure a default, the Security shall be promptly returned to Tenant.

59.  Estoppel Certificate.  (As an addition to Paragraph 38).  Tenant will, within ten (10) business days after Owner's request, execute and deliver a statement in the form provided by Owner or Owner's mortgagee, certifying (i) that this Lease is un-modified and in full force and effect (or if there have been modifications, stating that the same is in force and effect as modified and listing the modifications), (ii) the date to which fixed rent and additional rent has been paid, (iii) the amount and type of Security, if any, on deposit with Owner pursuant to this Lease, and (iv) whether there  is any default under the Lease or any event has occurred which with notice or passage of time would be a default and specifying such default or event. Such certification shall provide that the  statements contained therein shall be deemed to be representations and warranties which may be relied on by the Owner and  either parties with which Owner is dealing.  Tenant shall also include in such

certificate such additional information relating to the Lease as Owner may reasonably require.

60. <u>Survival</u>. Any obligation of Owner or Tenant which by its nature or under the circumstances can only be, or by the provisions of this Lease may be, performed after the expiration or earlier termination of this Lease, and any liability for a payment which shall have accrued to or with respect to any period ending at the time of such expiration or termination, unless expressly otherwise provided in this Lease, shall survive the expiration or earlier termination of this Lease.

61. <u>Allocation of Arrearage</u>. If Tenant is in arrears in the payment of rent or additional rent, Tenant waives Tenant's right, if any, to designate the items against which any payments made by Tenant are to be credited, and Tenant agrees that Owner may apply any payments made by Tenant to any items due from Tenant which Owner sees fit, irrespective of and notwithstanding any designation or  request by Tenant as to the items against which any such payments shall be credited.

62. <u>Exculpation.</u> Owner (or, if Owner is at any time a corporation, partnership, limited liability company or other entity, its officers, directors, shareholders, partners, members and principals, disclosed and undisclosed) shall have no personal liability under this Lease.  Tenant shall look only to Owner's estate and property in the demised premises (or the proceeds

thereof) for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Owner in the event of any default by Owner hereunder, and no other property or assets of Owner (or, if Owner is at any time a corporation, partnership, limited liability company or other entity, its officers, directors, shareholders, partners, members and principals, disclosed and undisclosed) shall be subject to lien, levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Owner and Tenant hereunder or Tenant's use or occupancy of the demised premises.  If Tenant shall acquire a lien on such other property or assets by judgment or otherwise, Tenant shall promptly release such lien by executing and delivering to Owner any instrument, prepared by Owner, required for such lien to be released.

   63. <u>Governing Law; Construction</u>.  Irrespective of the place of execution or performance, this Lease shall be governed by and construed in accordance with the laws of the State of New York.  If any provision of this Lease or the application thereof to any person or circumstances shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Lease and the application of that provision to other persons or cir-cumstances shall not be affected but rather shall be enforced to the extent permitted by law.  This Lease shall be construed

without regard to any presumption or other rule requiring con-
struction against the party causing this Lease to be drafted.
Each covenant, agreement, obligation or other provision of this
Lease on Tenant's part to be performed, shall be deemed and con-
strued as a separate and independent covenant of Tenant, not
dependent on any other provision of this Lease. All terms and
words used in this Lease, regardless of the number or gender in
which they are used, shall be deemed to include any other number
and any other gender as the context may require.

    64. <u>Owner's Consent Withheld</u>. If Tenant shall request
Owner's approval or consent and Owner shall fail or refuse to
give such consent or approval, Tenant shall not be entitled to
any damages for any withholding or delay of such approval or
consent by Owner, it being intended that Tenant's sole remedy
shall be an action for injunction or specific performance and
that such remedy shall be available only in those cases where
Owner shall have expressly agreed in writing to not unreasonably
to withhold or delay its consent or approval or where as a matter
of law Owner may not unreasonably withhold or delay its consent
or approval. Any refusal by Owner to consent or to approve any
matter or thing requested by Tenant shall be deemed reasonable
if, *inter alia*, the holder of any mortgage affecting the real
property of which the demised premises are a part or the
Condominium Board has refused to give its consent or approval

34

thereto wherever such consent or approval is necessary.

65. <u>Additional Remedy</u>. In addition to any other remedies Owner may have under this Lease, Tenant shall pay to Owner interest at the lower rate per month of (i) $.05 cents per dollar or (ii) the highest rate permitted by law on any rent or additional rent paid more than five (5) days after the same is due, which interest shall be paid for the period commencing on the date such rent or additional rent was first due and ending on the date the same is paid. All payments made by Tenant will be applied first to such late charge penalties and the balance to Basic Monthly Rent and the balance if any, to additional items of rent. There shall also be an additional charge on those checks of Tenant which are returned due to insufficient funds, not to exceed the charge of the bank issuing such charge.

66. <u>Execution and Delivery</u>. Notwithstanding any provision of this Lease, or any law or rule to the contrary, or the execution of this Lease by Tenant, this Lease shall not bind Owner, nor shall Tenant be permitted the benefits of this Lease, unless and until one or more counterparts of this Lease are executed by Owner and delivered to Tenant. Owner expressly disclaims any intention to be bound by any draft of this Lease, whether delivered to Tenant by Owner, or its counsel, unless and until this Lease is executed and delivered by both parties.

67. <u>Tenant's Consent to Modifications</u>. (a) If, in

35

connection with obtaining financing for the Condominium Unit, a lender shall request reasonable modifications of this Lease, Tenant shall consent to such modifications, providing such modifications do not increase the rent or additional rent payable by Tenant, or materially increase the obligation of Tenant or decrease the obligation of the Owners to Tenant, under this Lease or materially and adversely affect the leasehold interest of Tenant created by this Lease.

(b)  If, in connection with its regulations concerning formation or operation of The Stanford Condominium, the Attorney General or Department of Law or the Secretary of State or any other governmental authority having jurisdiction thereof shall issue regulations that require reasonable modifications of this Lease, Tenant shall consent to such modifications, providing such modifications do not materially increase the obligations of Tenant under this Lease or materially and adversely affect the leasehold interest of Tenant created by this Lease.

68.  Owner's Procural of Condominium Board Approval. Owner shall use its best efforts to cause the Condominium Board to provide the demised premises with all services and facilities which it is required to provide under the terms of the Declaration and the By-Laws, but Owner shall not be liable to Tenant in damages or otherwise.  Tenant shall not be entitled to any rent abatement or reduction for any failure of the Condominium Board

to so provide any such services and/or facilities.

69. <u>Notices to Mortgagees</u>. If any mortgagee shall notify Tenant that it is the holder of a mortgage affecting the demised premises, no notice, request or demand thereafter sent by Tenant to Owner shall be effective unless and until a copy of the same shall also be sent to such mortgagee in the manner pre-scribed in <u>Paragraph 27</u> and to such address as such mortgagee shall designate in writing to Tenant.

70. <u>Joint and Several Liability</u>. If two (2) or more individuals, corporations, partnerships, limited liability company or other business association (or any combination of two [2] or more thereof) shall execute this Lease as Tenant, the liability of each such individual, corporation, partnership, limited liability company or other business association to pay rent and perform all other obligations hereunder shall be deemed to be joint and several and all notices, payments and agreements given or made by, with or to any one of such individuals, corp-orations, partnerships, limited liability company or other business association shall be deemed to have been given or made by, with or to all of them.  In like manner, if Tenant shall be a partnership or limited liability company or other business association, the members of which are, by virtue of any state statute or federal law, subject to personal liability, the liability of each such member shall be joint and several.

71.  <u>Corporate Tenant, Limited Liability Company</u>

<u>Tenant</u>. (a)  If Tenant is a corporation, the persons executing

this Lease on behalf of Tenant hereby covenant  and warrant that

(i) Tenant is a duly constituted corporation  qualified to do

business in New York; (ii) all of Tenant's franchises and

corporate taxes have been paid to date; (iii) all  future forms,

reports, fees and other documents necessary for  Tenant to comply

with applicable laws will be filed by Tenant when due; and (iv)

such persons are duly authorized by the board of directors of

such corporation to execute and deliver this Lease on behalf of

Tenant; (b) If Tenant is a limited liability company, the persons

executing this Lease on behalf of Tenant hereby covenant and

warrant that (i) Tenant is a duly constituted limited liability

company, qualified to do business in New York; (ii) all of

Tenant's franchises taxes have been paid to date; (iii) all

future forms, reports, fees and other documents necessary for

Tenant to comply with applicable laws will be filed by Tenant

when due; and (iv) such persons are duly authorized by members of

such limited liability company to execute and deliver this Lease

on behalf of Tenant.

72.  <u>Mechanic's Lien</u>. Supplementing <u>Paragraphs 3 and</u>

<u>51</u> hereof, if Tenant shall fail to cause any mechanic's lien

which has been filed against the demised premises to be dis-

charged, then, in addition to any other right or remedy of Owner,

Owner may bond the amount claimed to be due, and the amount so bonded by Owner, including reasonable attorney's fees incurred by Owner in defending against such lien or procuring the bond or discharge of such lien, shall be due and payable by Tenant to Owner as Additional Rent.

73.    Attornment.  Supplementing Paragraph 7 hereof, if any person shall succeed to all or any part of Owner's interest in the demised premises, whether by purchase, foreclosure, deed in lieu of foreclosure, power of sale, termination of Lease or otherwise, and if so requested or required by such successor in interest, Tenant shall attorn to such successor in interest and shall execute such agreement in confirmation of such attornment as such successor in interest shall reasonably request.

74. Power of Sale.  In addition to Owner's remedies under Paragraph 18 hereof upon the occurrence of any default hereunder, after abandonment of the demised premises by tenant and at least five (5) days prior written notice by Landlord to Tenant, Owner shall have the right to sell at public or private sale all or any part of the goods, chattels, fixtures and other personal property belonging to Tenant which are or may be in or put into the demised premises during the term of this Lease, whether exempt or not from sale under execution or attach- ment (it being agreed that said property shall at all times be bound with a lien in favor of Owner and shall be chargeable for all

39

rent and for the fulfillment of the other covenants and
agreements herein contained) and apply the proceeds of such
sale, first (1st), to the payment of all costs and expenses of
conducting the sale or caring for or storing said property
(including all attorney's fees), second (2nd), toward the payment
of any indebtedness, including, without limitation, indebtedness
for rent, which may be or may become due from Tenant to Owner,
and third (3rd), to pay Tenant, on demand in writing, any surplus
remaining after all indebtedness of Tenant to Owner has been
fully paid.

     75.  <u>Casualty and Condemnation</u>. Notwithstanding anything
to the contrary in <u>Paragraph 9</u> herein, if the demised premises or
any part thereof shall be damaged by fire or other casualty,
Owner shall not elect to terminate this Lease unless the
Condominium Board decides not to rebuild and restore the
Building.  If within one hundred twenty (120) days of any
casualty or destruction,  the Condominium Board shall fail to
make such election, then and in such event, Tenant may at any
time thereafter, on not less than five (5) days prior written
notice to Owner, elect to terminate this Lease and upon the
expiration of such five (5)  day period this Lease shall
terminate as if that were the date originally scheduled for
termination.

     76.  <u>Responsibilities</u>.  Except for the Owner's  oblig-

ation (i) to pay Base Taxes as provided in <u>Paragraph 44</u>,(ii) with respect to restoration of the demised premises pursuant to <u>Paragraph 9</u> as amended herein, and (iii) to pay any common charges, assessments and other sums which may be assessed against the Condominium Unit of which the demised premises form all or a part, pursuant to the Declaration and By-Laws, as the same may from time to time be amended, Tenant shall pay all costs, fees and expenses in connection with the use, operation and occupancy of the demised premises.

77. <u>Subletting and Assignment</u>. Anything herein contained in <u>Paragraph 11</u> to the contrary notwithstanding, Owner shall not unreasonably withhold or delay its consent to a subletting or assignment of all of the Premises upon the following terms and conditions:

(a) If Tenant shall at any time or times during the term of this Lease, desire to assign this Lease or sublet all or part of the demised premises, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by: (i) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall not be less than fifteen (15) nor more than forty five (45) days after the giving of such notice; (ii) a statement setting forth, in reasonable detail, the identity of the proposed assignee or subtenant and its principals, the nature of its business and the its proposed

41

use of the demised premises; and, (iii) current financial information with respect to the proposed assignee or subtenant.

(b) The proposed subtenant or assignee is engaged in a business and the demised premises will be used in a manner which is in keeping with the then current standards of the Building and the proposed subletting or assignment does not violate any negative covenants as used in any other Lease between the Owner and other tenants in the Building.

(c) INTENTIONALLY OMITTED.

(d) The proposed subtenant or assignee is a reputable party of reasonable financial worth considering the respon- sibilities involved and Tenant shall have provided Owner with reasonable proof thereof.

(e) In the event that Tenant should effect the sublease at a square foot rental higher than that specified hereunder and Owner shall not have exercised its option to take such sublease as in subdivision (c) of this paragraph provided, such excess rental shall be paid to Owner as additional rent and any charge made by Tenant to subtenant for furniture, furnishings, decor- ations or other such items ("Tenant's Furnishings") shall be deemed "Additional Rent".

(f) Tenant shall remain fully liable for the payment of the rent and additional rent due and to become due under this Lease and for the performance of all the terms, covenants and

conditions of this Lease on the part of Tenant to be performed or observed.

(g) That no sublease shall be made to the Federal, State or Municipal Government or any department or subdivision thereof.

(h) INTENTIONALLY OMITTED.

(i) The proposed subtenant or assignee is not then an occupant of any part of the Building of which the demised premises forms a part. However, Owner will have no objection to such subtenant as long as Owner has no other space in the Building and as a result of the sublease the subtenant does not reduce its own space in the Building.

(j) In the event that Tenant shall request a consent pursuant to this paragraph and such consent shall be granted then counsel for Owner shall review the instruments and prepare the consent form and Tenant shall pay the reasonable fees of Owner's attorney.

(k) Provided Tenant furnishes Owner with a written assumption agreement in form and content satisfactory to Owner, Tenant may assign this Lease to a limited liability company of which Tenant is the sole member.

78. <u>Additional Remedy.</u> If Tenant hereunder continues in possession after the expiration date of this Lease, without a new written lease, lease extension, or renewal, executed by Owner

and Tenant and delivered to both parties as to Tenant's continued
occupancy, Tenant agrees that it shall be deemed an unauthorized
holdover occupant in all respects and further agrees that the
value of the use and occupancy for the period it shall remain in
possession of the demised premises shall be deemed to be no less
than an amount which is TWO HUNDRED (200%) PERCENT of the total
of (a) the last Basic Annual Rent, plus (b) all of the
obligations of this Lease and rental agreement including, but not
limited to the provisions of the escalation clauses, are to
apply, that such charges under escalation clauses are to be
billed on a monthly basis, computed at the rate of one half 1/12
of the annual charge that would apply for the most recent
current year, subject, however, to adjustment either by
additional charge or credit in the event that final figures for
the projected interval, indicates that the estimated bill charges
vary from the actual figures.  As a holdover occupant, Tenant
shall continue to be liable for all other Tenant obligations
provided in the Lease.

     79.   <u>Lease is Subject and Subordinate.</u>  This Lease is
subject and subordinate to (a) the By-Laws, Rules and Regulations
and Provisions of the Declaration Establishing a Plan for
Condominium Ownership of the Premises called The Strand
Condominium and (b) Powers of Attorney granted to the Board of
Managers, leases, agreements, mortgages, renewals, modifications,

consolidations, replacements and extensions to which the
Condominium Unit of which the demised premises forms a part is
presently or may in the future be subject.  Tenant shall not
perform any act, or fail to perform an act, if the performance or
failure to perform would be a violation of or default in the
Declaration or a document referred to in (b).  Tenant shall not
exercise any right or privilege under this Lease, the performance
of which would be a default in or violation of the Declaration or
a document referred to in subdivision (b).  Tenant shall promptly
execute any certificate(s) that Owner requests to confirm that
this Lease is so subject and subordinate.  Tenant appoints Owner
as its Power of Attorney coupled with an interest, authorizing
Owner, to execute and deliver any such certificates(s) for
Tenant.  Tenant agrees to observe and be bound by any and all of
the terms contained in the Condominium By-Laws which apply to the
occupant or user of the Condominium Unit of which the demised
premises form a part or the Condominium common areas and
facilities.  Tenant agrees to observe all of the rules and
regulations of the Condominium Association and the Board of
Managers.

        80.  <u>No Affirmative Obligations of Owner Or Condominium
Association.</u>  Except as otherwise provided in the Lease or the
Rider, Owner is not obligated to provide or render any services
whatsoever to the Tenant or perform any affirmative obligations

45

under the terms of this Lease.  Owner is not liable for damages
or otherwise in the event Tenant suffers them as a result of any
act committed or omitted to be performed by the Condominium
Association or the Board of Manager, or any other party.  Except
as otherwise expressly provided herein, Owner shall not be liable
to Tenant, its successors, assigns or Subtenants with respect to
any of the affirmative obligations to be performed by any third
party including the Condominium Association or the Board of
Managers under the Declaration and Owners is released from any
liability, except as otherwise expressly provided in this Lease
or in the Rider.  Tenant must continue to pay all items of Basic
Monthly Rent and all additional rent as required under the terms
of this Lease, regardless of any failure of performance by Owner.
None of the terms of this Lease shall in any way be affected as a
result of that failure.  Owner will use its reasonable efforts,
in demanding the performance,  by the party obligated, of its
obligations under the applicable agreement including any
obligation to provide services.  Tenant  agrees to indemnify and
save Owner safe and harmless from and against any and all claims,
liabilities or demands arising from  the breach by Tenant of any
of the obligations, duties under the Declaration or other
agreement, or any act or omission to act or negligence of Tenant.

  81.  <u>Signs.</u>  The sign provisions contained
in the Condominium Offering Plan, as the same may have been

46

modified and amended from time to (the "Offering Plan) as it
relates to the Commercial Condominium Space is attached to the
lease, as "Exhibit Z" and made a part hereof.   The Owner herein
has no objection to the Tenant installing, repairing and
maintaining within or in the immediate location of the demised
premises, below the third floor level and on the plazas or
sidewalk adjacent to the demised premises' entrance a sign or
signs, which may be illuminated, for identification purposes,
provided Tenant shall comply with the terms of the Offering Plan,
and all governmental codes, ordinances, regulations and
requirements and pay all necessary fees and obtain all necessary
permits. If the Condominium Board or the then managing agent on
behalf of the Condominium Board (collectively referred to as the
"Condominium Board") shall object to the proposed sign or signs
that Tenant proposes to install, repair and maintain, provided
Tenant (a) keeps Owner fully informed and advised of all steps in
any such negotiations including furnishing Owner true copies of
all correspondence or notices received or sent to the Condominium
Board, and (b) handles such negotiations at Tenant's sole cost
and expense, and keeps Owner safe and harmless, Owner authorizes
the Tenant to deal directly with the Condominium Board to resolve
any objection the Condominium Board may raise with respect to
Tenant's proposed sign or signs. Owner shall not charge Tenant
for Owner's ministerial activities in connection with the sign or

47

signs contemplated in this sub paragraph, including but not limited to forwarding letters or notices to Tenant or reviewing and signing licence or permits.

      82.  <u>INTENTIONALLY OMITTED.</u>

(continued on page 49)

48

**83.    USE CLAUSE:**    Tenant shall use and occupy demised premises for the use, on an exclusive basis, in the Commercial Condominium of which the demised premises forms a part, as follows:  Skin Care, Facials, Microdermabrasion, Body Care, Diet Consultation, Hair and Skin Consultations, cosmetics, Organic Vitamin Supplements, All Hair Services (highlights, hair color, perm and etc.) Hair Care, Hair Treatments, Hair Restoration, Hair Replacement and Wigs, Waxing, Hair Removal, Organic Canned Food and Mineral Water, Diet Analysis, Consulting Services, Organic Health and Skin Care Management, and Threading.  So long as a nail salon occupies another portion of the Commercial Condominium of which the demises premises forms a part Tenant shall not provide nail care.

577-10 Realty Company

By: _____
Joe Stareshefsky, Partner


Anuj-Rani West Side, LLC

By: _____
Anuj Thukral, Member

49

SCHEDULE A

Annexed to Lease between

577-10 REALTY COMPANY, As Owner,

and

ANUJ-RANI WEST SIDE LLC, As Tenant

Dated December 23, 2007

The Basic Monthly Rent for the term of the Lease shall be:

(i) From the Commencement Date, through and including June 30, 2008, $8,500.00, per month;

(ii) For the period from July 1, 2008, through and including December 31, 2008, $9,500.00, per month;

(iii) For the period from January 1, 2009, through and including December 31, 2010, $114,480.00, per annum, payable $9,540.00, per month;

(iv) For the period from January 1, 2011, through and including December 31, 2013, $121,348.90, per annum, payable $10,112.40, per month;

(v) For the period from January 1, 2014, through and including December 31, 2016, $128,629.83, per annum, payable $10,719.15, per month;

(vi) For the period from January 1, 2017, through and including December 31, 2019, $136,347.61, per annum, payable $11,362.30, per month;

(vii) For the period from January 1, 2020, through and



4850

including December 31, 2022, $144,528.46, per annum, payable

$12,044.00, per month.

A951

SCHEDULE X

Annexed to Lease between

577-10 REALTY COMPANY

as Owner, and

ANUJ-RANI WEST SIDE LLC

As Tenant

Dated December 31 2007

There is no Owner Work to be performed.  Tenant has accepted the Demised Premises, "As Is".

-200-

EXHIBIT "Z"

asserting jurisdiction in connection with any addition, alteration, improve-
ment, repair or subdivision of such Commercial Unit or the operaton or use of
the Commercial Unit, at which time, the requesting party shall indemnify and
hold the Board of Managers of the Condominium and the other Unit Owners
harmless from any expense or liability by virtue of the execution of the
application or such other documents.

The Commercial Unit may be used for commercial purposes or for any other
lawful purpose. Any Owner of a Commercial Unit located in whole or in part
on the first floor and any tenant or tenants of such Unit or Units pursuant to
the terms of any lease pertaining thereto, shall have the right, without consent
of the Board of Managers, charge or limitation, to install, repair and maintain
either within or in the immediate location of such particular Unit below the
windows at the third floor level and on the plaza or sidewalk adjacent to such
Commercial Unit entrance a sign or signs, which may be illuminated, for
advertising or identification purposes. Such Unit Owner shall also have the
right, without consent of the Board of Managers, charge or limitation to
install, repair and maintain one or more canopies or awnings over first floor
windows or any entrance to such Commercial Unit and/or to install window
protection devices. Such Unit Owner and any tenant of space in the Unit shall
comply with all of the laws, orders, rules and regulations of the governmental
authorities having jurisdiction thereof, including zoning laws, building codes
and as required by insurance underwriters. The Unit Owner or its tenant shall
obtain and pay for all permits required for such signs, canopies or awnings and
any necessary renewal fees.

The Garage Unit. The Garage Unit will be located on a portion of the cellar
level, first floor level and second floor level.

The Garage Unit Owner shall have the right, without the payment of any fees
or charges to the Board of Managers or the Managing Agent, to sell or lease its
Unit, or any part thereof, without the Board of Managers having any right of
first refusal to purchase or lease such Unit, and all sale and/or rental proceeds
shall belong solely to the Garage Unit Owner.

The Board of Managers shall be obligated to permit the Garage Unit Owner to
install and use additional equipment in the risers and conduits serving the
Building, provided the Garage Unit Owner reimburses the Board of Managers
for the actual costs attributable to such installation and use.

The Board of Managers does not have the right to approve any change in the
use of the Garage Unit, or any part thereof or to apply for or cause any
amendment to the Building's Certificate of Occupancy to authorize a different
use except at the request of the Unit Owner. The Garage Unit Owner shall
have the right, without obtaining the consent of the Board of Managers or the
residential Unit Owners or mortgagees of Units other than the affected Unit,
to subdivide the Garage Unit into two or more Garage Units and to reallocate
the Common Interest of the Garage Unit among the newly established Garage
Units in proportion to their respective floor areas. Such subdivision must be
effected in a duly recorded amendment to the Declaration filed by the new
Owners. Under no circumstances will the Common Interest of any

53



NEW STAIR W/ CARPETING
HANDRAIL ON ONE SIDE
42" WIDTH

EXIST STORE RM
ADD'L SHELVING TO 7'-8" HT

21'-0"

EXIST W.C.
TO REMAIN

CARPET

45'-0"

LINE OF MEZZ. ABV.

4'-0" HT GYP BD
PARTITION W/ WD CAP

VINYL FLOOR
WAITING AREA

WOOD BENCH

NEW VESTIBULE
INTERIOR DOOR TO BE
PROVIDED BY OWNER

NOTE: PROVIDE FULL HT 2 LAYERS GYP BD -ONE SIDE
TO BOTTOM OF ROOF SLAB @ NORTH PARTY WALL

| PROJECT: THE STRAND 587 10TH AVE | DATE: 7-11-95 | DWG. No. |
|---|---|---|
| TITLE: COMMERCIAL SPACE FIRST FLOOR | SCALE: 1/8"=1'-0" | A-1 |



STORAGE
110 S.F.

OFFICE #1
27 S.F.

OFFICE #2
4'-3" x 10'-0"
42 S.F.

DN.

CEILING @ FIRST
FLOOR SPACE BELOW

NOTE: CARPET THROUGHOUT
ALL PARTITIONS FULL HT. W/ MTL STUDS & GYP BD EA SIDE

PROJECT: THE STRAND 587 10TH AVE.

TITLE: COMMERCIAL SPACE
MEZZ. LEVEL

DATE:
7-11-95

SCALE:
1/8"=1'-0"

DWG. No.
A-2