```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:  1/28/2025               │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                      :

500 WEST 43RD STREET REALTY, LLC,       :
                                        :

             Plaintiff,                :

                                        :               23-cv-09510 (LJL)

            -v-                    :

                                        :              OPINION AND ORDER

ANUJ THUKRAL a/k/a ANUJ THURKAL,   :

             Defendant.          :

                                        :
----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff 500 West 43rd Street Realty, LLC ("Plaintiff") moves, pursuant to Federal Rules of Civil Procedure 56, for an order granting summary judgment on its complaint against Defendant Anuj Thukral, a/k/a/ Anuj Thurkal ("Defendant") and dismissing Defendant's affirmative defenses and counterclaims. Dkt. No. 23.

For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

The following facts, drawn from Plaintiff's Rule 56.1 statement, are undisputed except where otherwise indicated and taken as true for purposes of this motion.

Plaintiff is the owner of a retail condominium unit located at 500 West 43rd Street, New York, New York. Dkt. No. 23-1 ("SUF") ¶ 1; Dkt. No. 23-3 ("Stareshefsky Declaration [MS Decl.]") ¶ 2. It is party to a written lease agreement (the "Initial Lease") with non-party Anuj-Rani West Side LLC ("Tenant") entered into on or about December 21, 2007, providing for the lease by Tenant for a period of fifteen years of one of the five separate stores in the unit (the

"Premises"). SUF ¶ 2; MS Decl. ¶ 5; Dkt. No. 23-8 ("Lease"). The commencement date of the

Initial Lease was January 1, 2008, and it terminated on December 31, 2022. Lease ¶ 43.

Defendant is the guarantor of Tenant's obligations to pay "Basic Monthly Rent" and

"additional rent" under the Initial Lease, pursuant to a Guaranty signed on December 31, 2008.

SUF ¶ 4; Dkt. No. 23-9 ¶ 6. Paragraph three of the Guaranty states:

> Anything herein to the contrary notwithstanding, the undersigned, personally Guaranties payments of Basic Monthly Rent, and additional rent.

Dkt. No. 23-9 ¶ 3. Paragraph four of the Guaranty states:

> Except as otherwise provided in subparagraph 3 above, anything herein to the contrary notwithstanding, upon receipt by Owner of a duly executed and acknowledged surrender declaration in which tenant confirms to Owner that Tenant and anyone claiming through or under Tenant has vacated the Demised Premises as of a certain date, that the space is unoccupied and available for rental, and that no one else besides Owner has any right to the fixtures and improvements remaining in the Demises Premises (the "Surrender Declaration") together with all keys to the Demised Premises and removal by Tenant of its personal property, (including signs, whether or not the same were agreed to By the Owner or the Condominium Association) therefrom (such date that Owner actually receives the Surrender Declaration and all keys shall be known as the "Surrender Date"), the Guarantor shall be released from all liability with respect to any obligations of Tenant under the Lease arising or accruing after the Surrender Date, including, but not limited to, all rent and additional rent due after the Surrender Date, Guarantor shall continue to remain liable pursuant to the terms of this Guaranty for (i) all rent and additional rent prior to the Surrender Date and (ii) any liability of Tenant arising our [sic] of a breach of any warranty or representation of Tenant under the "Surrender Declaration".

Dkt. No. 23-9 ¶ 4.

On or about September 9, 2009, Plaintiff, Defendant, and Tenant entered into a letter

agreement (the "2009 Agreement") pursuant to which Plaintiff and Tenant agreed to correct

Plaintiff's name in the Initial Lease. SUF ¶ 5; Dkt. No. 23-10 (the "2009 Letter"). In the 2009

Agreement, Defendant acknowledged, and Tenant confirmed, that the Initial Lease contained a

typographical error in referring to the owner as 577-10 Realty Company and that the owner of

the Premises was actually Plaintiff.  In the 2009 Agreement, Defendant confirmed, ratified, and restated the Guaranty.  SUF ¶ 6; 2009 Letter ¶ 10.

In 2012, Tenant began to accrue arrears of rent and additional rent, and in 2013, Plaintiff commenced a nonpayment proceeding in the Civil Court of the City of New York against Tenant.  MS Decl. ¶ 8.  That proceeding was resolved by a Stipulation of Settlement, dated May 1, 2013, pursuant to which Plaintiff and Tenant agreed to reduce the Basic Monthly Rent set forth in the Initial Lease in accordance with a formula calculated in the Stipulation of Settlement. SUF ¶ 7; MS Decl. ¶ 8; Dkt. No. 23-11.

Tenant began to accrue arrears of rent and additional rent again on April 1, 2020.  MS Decl. ¶ 9.

Plaintiff contends that Defendant remained in possession of the Premises leased from Plaintiff until September 16, 2022.  SUF ¶ 8.  Defendant disputes that claim.  Defendant asserts that Tenant surrendered the Premises on August 31, 2020, after its business was closed down for several months due to the COVID 19 pandemic.  Dkt. No. 24-1 ¶¶ 6, 11.  Defendant attaches to his declaration a letter he states was sent by certified mail to Plaintiff on August 31, 2020.  *Id.* ¶ 6; Dkt. No. 24-2.  The letter is from Tenant and is addressed to the management company and to the incorrect name that appeared on the Initial Lease prior to the 2009 Agreement.  It states:

> The store has been closed for many months and Roni Spa can no longer continue business so we are surrendering occupancy and key to you in as-is condition.  We are not removing any of the over 90k of improvements or the 30k of furniture so we would like the return of our security of 38k.

Dkt. No. 24-2.  Defendant offers no evidence that Tenant returned the keys to the Premises or removed Tenant's personal property.

Plaintiff avers that it did not receive the August 31, 2020 letter and that it did not receive a duly executed and acknowledged surrender declaration.  Dkt. No. 27-1 ¶¶ 2, 5.

It is undisputed that Tenant sent Plaintiff a letter from counsel dated September 18, 2020.

SUF ¶ 21; MS Decl. ¶ 11.  The letter stated in pertinent part as follows:

> As you are aware, due to the COVID Pandemic, the premises rented by Anuj-Rami West Side LLC, has been closed, and it does not appear that they will successfully be able to resume business.
>
> As it appears that a moratorium exists on evictions, my client has authorized me to offer to surrender possession now in exchange for a return of their security.
>
> Please advise, as it appears that all evictions are currently stayed, and your client's losses would be estopped from mounting.

Dkt. No. 23-16.

Plaintiff sent a letter to counsel for Tenant rejecting the offer.  SUF ¶ 22; MS Decl. ¶ 11;

Dkt. No. 23-17.  In pertinent part, the response letter stated:

> My client has considered your proposal and rejects it.  However, in light of the substantial arrears that my client is entitled to collect, regardless of the current moratorium on evictions, and the approximately $145,000.00 of base rent that will be owed to my client for the final lease year, my client will offer yours an opportunity to surrender the premises, with my client retaining the entire $38,000.00 security deposition in full satisfaction of all arrears and prospective damages through the end of the lease term.  I note that there is a personal guaranty of this lease, and my client would be willing to release the guarantor from its obligations, which already far exceed the $38,000.00 security, if your client agrees to surrender the leasehold on the terms I propose herein.
>
> Note that any surrender of the premises must be subject to written agreement between the parties, and that this letter is for settlement purposes only, without prejudice to all of my client's rights and remedies, which are expressly reserved and not waived.

Dkt. No. 23-17.

Plaintiff received no response to the letter.  MS Decl. ¶ 11.

In light of the moratorium on evictions imposed by the New York City Civil Court because of the COVID-19 pandemic, Plaintiff elected to wait until 2022 to proceed against

Tenant.  MS Decl. ¶ 12.  On September 16, 2022, counsel for Tenant and counsel for Plaintiff signed a stipulation pursuant to which Tenant surrendered the possession of the Premises to Plaintiff and Plaintiff discontinued its state court eviction action.  MS Decl. ¶ 12; Dkt. No. 1-6.

Tenant did not, at any time prior to September 16, 2022, (a) deliver to Plaintiff a signed, acknowledged surrender declaration in accordance with paragraph 4 of the Guaranty; (b) deliver to Plaintiff the keys to the Premises Tenant leased from Plaintiff; or (c) remove its personal property from the Premises.  SUF ¶ 20.

Plaintiff further contends that, as of September 16, 2022, Tenant failed to pay Plaintiff the total sum of $359,820.57, owed by Tenant pursuant to the Initial Lease, as amended, comprised of Basic Monthly Rent, real estate tax increases, common charge increases, and Plaintiff's attorney's fees for the period beginning on April 1, 2020, and ending on September 16, 2022, inclusive.  SUF ¶¶ 9, 13.

Plaintiff has not received any payments from Tenant, Defendant, or any other party on account of Tenant, since prior to March 17, 2020.  SUF ¶¶ 23-25 Dkt. No. 23-2 ("Supplemental Stareshefsky Decl.") ¶ 6.

## PROCEDURAL HISTORY

Plaintiff commenced this case by complaint filed on October 30, 2023, seeking recovery from Defendant of $359,820.57 owed under the Guaranty with interest from September 16, 2022, together with costs and disbursements of the action.  Dkt. No. 1.  The Clerk of Court entered a certificate of default on February 16, 2024, when Defendant failed to respond to the complaint by January 31, 2024.  Dkt. No. 14.  On February 14, 2024, Defendant filed an answer and counterclaims to the complaint, Dkt. No. 15, and, accordingly, the Court vacated the certificate of default.  Dkt. No. 17.

On March 7, 2024, the Court entered a Case Management Plan and Scheduling Order providing for all discovery to be completed no later than May 10, 2024.  Dkt. No. 16.

On May 13, 2024, Plaintiff filed a motion for summary judgment, seeking judgment in its favor on all claims in its complaint and the dismissal of Defendant's affirmative defenses and counterclaims.  Dkt. No. 21.  No opposition was filed.  On October 23, 2024, the Court issued a Memorandum and Order, denying the motion without prejudice.  Dkt. No. 22.  The Court concluded that Plaintiff satisfied the first two elements of its claim for breach of guaranty under New York law, i.e., the existence of a guaranty executed by the Defendant and the underlying debt.  *Id.* at 3–4.  However, it ruled that Defendant had failed to submit evidence to establish the third element—Defendant's alleged failure to perform under the guarantee.  *Id.* at 3.  The Court also indicated that Plaintiff had not established its claim to reimbursement for taxes and attorney's fees.  *Id.* at 4.

On November 22, 2024, Plaintiff filed this renewed motion for summary judgment, along with a Rule 56.1 statement, two declarations of Moshe Stareshefsky, the declaration of Alexandra Mercado, the declaration of counsel, and exhibits.  Dkt. No. 23.  Defendant filed an affirmation in opposition to the motion on December 19, 2024.  Dkt. No. 24.  Plaintiff filed a reply memorandum of law in further support of the motion for summary judgment on January 3, 2025, along with a reply declaration of Stareshefsky.  Dkt. No. 27.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

In the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rule 56.1 sets forth specific requirements for how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[ ] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeusert Co.*, 537 F.3d 140, 145 (2d Cir. 2008). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c); *see T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

## DISCUSSION

### I.    Liability

To establish a claim for breach of guaranty under New York law, a plaintiff must "the existence of the guaranty executed by defendant, the underlying debt, and defendant's failure to perform under the guaranty." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 84 (N.Y. 2015); *Ruradan Corp. v. City of New York*, 2024 WL 2882185,

at *6 (S.D.N.Y. June 6, 2024); *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d

508, 530 (S.D.N.Y. 2020); *UMB Bank, N.A. v. Bluestone Coke, LLC*, 2020 WL 6712307, at *4

(S.D.N.Y. Nov. 16, 2020); *Sarfati v. Palazzolo*, 37 N.Y.S.3d 537 (1st Dep't 2016).  The burden

then shifts to the defendant to raise a triable issue of fact in the form of a bona fide defense.

*ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, 2015 WL 5710947, at *2 (S.D.N.Y. Sept. 29,

2015); *see also Torin Assocs., Inc. v. Perez*, 2016 WL 6662271, at *4 (S.D.N.Y. Nov. 10, 2016)

("Plaintiff's *prima facie* case upon an unconditional guarantee requires proof of the 'existence of

the guaranty, the underlying debt[,] and the guarantor's failure to perform under the guaranty.'"

(quoting *Navarro*, 36 N.E.3d at 84)).  "To prevail on its motion for summary judgment, Plaintiff

must demonstrate that there are no genuine disputes surrounding any of the facts that are material

to these three requirements." *Torin Assocs.*, 2016 WL 6662271, at *4.

There is no genuine dispute that there exists a Guaranty pursuant to which Defendant

guaranteed the obligations of Tenant to pay Basic Monthly Rent and additional rent, that Tenant

failed to pay Basic Monthly Rent and additional rent due under the Initial Lease, and that neither

Tenant nor Defendant paid those sums.  Plaintiff has established liability.  *See UMB Bank, N.A.*

*v. Bluestone Coke, LLC*, 2020 WL 6712307, at *4 (S.D.N.Y. Nov. 16 2020); *Navarro*, 36 N.E.3d

at 84; *Ruradan Corp. v. City of New York*, 2024 WL 2882185, at *6 (S.D.N.Y. June 6, 2024); *KLS*

*Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 530 (S.D.N.Y. 2020), *aff'd*, No. 21-

1263, 2022 WL 2759055 (2d Cir. July 13, 2022); *Sarfati v. Palazzolo*, 37 N.Y.S.3d 537, 538 (1st

Dep't 2016).

Defendant admits that Tenant was in arrears which have not been paid but argues that the

Premises were surrendered on August 31, 2020, that Defendant was then only in arrears

approximately six months, and that Defendant has offsets and damages from abandoned

scaffolding in front of the building which blocked visibility to their business and interfered with

their business operations.  Dkt. No. 24 ¶ 8.  Defendant claims that Plaintiff was aware that

Tenant vacated the Premises and never returned as of August 31, 2020, and that Plaintiff also

knew or should have known that no utilities were being used.  *Id.* ¶ 6.  Defendant further claims

that there exist issues that require discovery between the parties regarding the date of surrender

as well as claims of offset.  *Id.* ¶¶ 9, 11.  In addition, Defendant argues that Plaintiff sent no

correspondence requesting action from Defendant from August 31, 2020, through the date of the

landlord-tenant stipulation, that Plaintiff is guilty of laches, that equitable estoppel applies, and

that Plaintiff has not substantiated the efforts it made to relate the Premises.  *Id.* ¶¶ 12–13, 16,

27–28.

Plaintiff has not offered evidence to create a genuine issue of fact that it surrendered the

Premises prior to September 16, 2022.  The August 31, 2020 letter, even if the Court assumes

that it was received, would not constitute a surrender or a Surrender Declaration and would not

relieve Defendant of his obligations under the Guaranty.  Article 24 of the Initial Lease provides

that:

> No act or thing done by Owner or Owner's agents during the term hereby demised
> shall be deemed in acceptance of a surrender of said premises and no agreement to
> accept such surrender shall be valid unless in writing signed by Owner.  No
> employee of Owner or Owner's agent shall have any power to accept the keys of
> said premises prior to the termination of the lease and the delivery of keys to any
> such agent or employee shall not operate as a termination of the lease or a surrender
> of the premises.

Lease ¶ 24.  Defendant has proffered no evidence of a writing signed by Plaintiff accepting

surrender of the Premises.  The undisputed evidence before the Court is to the contrary.

The August 31, 2020 letter did not constitute a Surrender Declaration.  Under paragraph

four of the Guaranty, a Surrender Declaration must (1) be "duly executed and acknowledged;"

(2) confirm to the Owner that the Tenant and anyone claiming through or under Tenant has

vacated the Premises; (3) confirm that the space is unoccupied and available for rental and no

one else has a right to the fixtures and improvements remaining in the Premises; (4) include all keys to the Premises; and (5) confirm that all personal property has been removed.  Dkt. No. 23-9 ¶ 4.  Defendant has not submitted evidence that there was a valid surrender.  *See 9-11 Stanton St. Realty Corp. v. Stanton St. Cleaners, Inc.*, 203 N.Y.S.3d 15, 18 (1st Dep't 2023).  The acknowledgment is important; it establishes an understanding on the part of the lessor and lessee that the conditions for surrender have been satisfied.  It is not sufficient that Tenant sent a letter—Tenant was also required to ensure that the letter was received and acknowledged for it to have legal effect.  Defendant has submitted no evidence of a "duly executed and acknowledged" declaration.  Because there is no evidence of a writing by Plaintiff accepting the August 31, 2020 letter, that letter could not have effected a surrender.  *See, e.g.*, *228E58STR LLC v. Koleksiyon Mobilya San A.S.*, 2020 WL 4260959, at *8 (S.D.N.Y. July 23, 2020) (denying that interpreting guaranty to permit tenant's unilateral surrender without landlord's consent "would have *any* practical or commercially sensible purpose"); *789 Ninth & 414 E. 74th Assocs. LLC v. Hundalani*, 2023 WL 4472162, at *13 (S.D.N.Y. July 11, 2023) (finding no valid surrender occurred without landlord's written acknowledgment, as explicitly required by the lease); *41 Clinton Ave. Realty Corp. v. Silver*, 52 N.Y.S.3d 650, 651 (2nd Dep't. 2017) (declining to relieve guarantor of obligations where surrender declaration was not signed by landlord, as required by guaranty).  The letter also does not contain many of the other requirements of a Surrender Declaration, including confirmation that no one else has a right to fixtures and improvements remaining in the Premises, that the personal property had been removed, and that all keys had been provided.  Indeed, the letter admits that the personal property had not been removed from the Premises.  The letter cannot relieve Defendant of its obligations under the Guaranty.

Defendant argues that Plaintiff's claim is barred under the doctrines of laches and equitable estoppel and because Plaintiff was obliged to mitigate its damages by reletting the premises. Dkt. No. 24 ¶¶ 12–13, 27–28. Plaintiff argues that Defendant has waived his right to assert any affirmative defenses other than lack of consideration and actual payment to contest liability under the Guaranty, because the Guaranty is unconditional and absolute. Dkt. No. 23-27 at ECF 9.

"Courts applying New York law have repeatedly found that 'broad, sweeping and unequivocal language in an absolute and unconditional guaranty . . . forecloses affirmative defenses and counterclaims.'" *Hitachi Constr. Mach. Co., Ltd v. Weld Holdco, LLC*, 2023 WL 8452389, at *13 (S.D.N.Y. Dec. 6, 2023), *appeal withdrawn sub nom. Hitachi Constr. Mach. Co. v. Weld Holdco, LLC*, 2024 WL 1549734 (2d Cir. Mar. 15, 2024) (quoting *136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding*, 644 F. App'x 10, 12 (2d Cir. 2016) (summary order) (internal quotations omitted). "Absolute and unconditional guaranties . . . preclude guarantors from asserting a broad range of defenses under New York law." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 35 (2d Cir. 1999) (Sotomayor, J.); *see also HSH Nordbank AG New York Branch v. St.*, 421 F. App'x 70, 73 (2d Cir. 2011); *Javelin Glob. Commodities (UK) Ltd. v. Booth*, 2023 WL 7303398, at *7 (S.D.N.Y. Nov. 6, 2023); *Wilmington Tr., Nat'l Ass'n as Tr. for Benefit of Registered Holders of Wells Fargo Com. Mortg. Tr. 2016-C34, Com. Mortg. Pass-Through Certificates Series 2016-C34 v. Hajjar*, 2021 WL 1318030, at *2 (S.D.N.Y. Apr. 8, 2021); *Navarro*, 36 N.E.3d at 85. The Guaranty here does not contain any language suggesting it is absolute or unconditional or that the guarantor waives any defenses. It simply states that the guarantor guarantees payments of Basic Monthly Rent and additional rent. Dkt. No. 23-9 ¶ 3.

Accordingly, the language of the Guaranty itself does not preclude Defendant from raising affirmative defenses.

Nonetheless, Defendant has not presented evidence that would create a triable issue and prevent summary judgment. Once Plaintiff has met its prima facie burden by showing the existence of the Guaranty, the underlying debt, and the guarantor's failure to perform, "the burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with respect to a bona fide defense." *Navarro*, 36 N.E.3d at 84 (citation omitted). There must be "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendant has not identified evidence that would create a triable issue of fact.

Defendant cannot forestall summary judgment by mouthing the words "laches" and "equitable estoppel." Dkt. No. 24 ¶ 27–28. Laches is an equitable doctrine. It is well established that "[l]aches within the term of the statute of limitations is no defense at law." *United States v. Mack*, 295 U.S. 480, 489 (1935); *accord United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982). "[T]he doctrine has no bearing on the breach of contract claim brought in this case." *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 573 F. Supp. 3d 913, 919 (S.D.N.Y. 2021) (citing cases); *accord Liebowitz v. Elsevier Sci. Ltd.*, 927 F. Supp. 688, 704 (S.D.N.Y. 1996) ("Laches is a defense only against claims in equity and not at law."); *Blinds To Go (U.S.), Inc. v. Times Plaza Dev., L.P.*, 846 N.Y.S.2d 296, 297 (2007) (2nd Dep't 2007) (finding that laches is inapplicable to claims for damages for breach of commercial lease).[1]

---

[1] Moreover, Defendant fails to demonstrate that any delay by Plaintiff in the commencement of this proceeding resulted in prejudice. *See Dwyer by Dwyer v. Mazzola*, 567 N.Y.S.2d 281, 282 (2nd Dep't 1991). Plaintiff initiated the instant action on October 30, 2023, just thirteen months after Tenant surrendered the Premises on September 16, 2022. Dkt. No. 1. This thirteen-month delay "is not so unconscionable as to warrant the conclusion that defendant was prejudiced

Defendant's equitable estoppel argument is also unavailing, and for the same reason. Courts have held that equitable estoppel, as an equitable defense, "ha[s] no place in an action at law for enforcement of a guaranty." *Daiwa Special Asset Corp. v. Desnick*, 2002 WL 1997922, at *12 (S.D.N.Y. Aug. 29, 2002) (citations omitted); *accord Avamer 57 Fee LLC v. Gorgeous Bride, Inc.*, 2022 WL 1305986, at *5 (N.Y. Sup. Ct. May 02, 2022) (citation omitted); *United States v. Gordon*, 78 F.3d 781, 786 (2d Cir. 1996).

Even if the doctrine were applicable, Defendant's equitable estoppel defense would fail. Under New York law, equitable estoppel requires: (1) concealment of facts or a false representation; (2) intent or expectation that the concealment or misrepresentation will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; and (4) actual reliance upon the concealment or misrepresentation. *Gen. Elec. Cap. Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (citations omitted); *see Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006). The doctrine is intended "to prevent the infliction of unconscionable injury and loss upon one who has relied on the promise of another." *Am. Bartenders Sch., Inc. v. 105 Madison Co.*, 450 N.E.2d 230, 230 (N.Y. 1983) (citation omitted). Defendant claims that Plaintiff's counsel falsely disputed in September 2022 that Defendant had surrendered the Premises on August 31, 2020. Dkt. No. 24 ¶¶ 5, 29. However, the record presents no indication of a false promise upon which Defendant relied. The Court has concluded that there is no evidence that Tenant surrendered the property at any time prior to September 16, 2022. The Guaranty expressly states that surrender is not valid until Plaintiff acknowledges it, and Tenant has removed all personal property. Dkt. No. 23-9 ¶ 4. The burden of obtaining such

---

thereby," particularly when the action was commenced well within the statutes of limitation. *Spence v. Franklin Plaza Apartments*, 457 N.Y.S.2d 516, 517–18 (1st Dep't 1983).

acknowledgment falls on Tenant.  It is not unconscionable for Plaintiff to recover the rent owing

up until the point of the Tenant's surrender of the Premises, as Plaintiff is entitled to under the

clear and unambiguous terms of this contract.  Furthermore, even if the Court were to credit that

a misleading or false representation was made by Plaintiff to Tenant in September 2022, that

representation could only induce prospective reliance, not retroactively impair Plaintiff's right to

recover rent that accrued prior to that date.

Defendant's assertion that Plaintiff should have made efforts to relet the property after

surrender is equally unpersuasive.  Dkt. No. 24 at ¶ 12.  Under New York law, a commercial

landlord has no duty to relet premises surrendered by a tenant before the lease expires.  *172 Van*

*Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*, 25 N.E.3d 952, 956 (N.Y.

2014).  "Once the lease is executed, the lessee's obligation to pay rent is fixed according to its

terms and a landlord is under no obligation or duty to the tenant to relet, or attempt to relet

abandoned premises in order to minimize damages."  *Holy Props. v. Cole Prods.*, 661 N.E.2d

694, 696 (N.Y. 1995) (internal citations omitted).  It is legally irrelevant that Plaintiff allegedly

delayed reletting the Premises.  Once Tenant ceased paying rent and surrendered the Premises,

Plaintiff has the right to "do nothing and collect the full rent due under the lease."  *172 Van*

*Duzer Realty*, 25 N.E.3d at 956 (citations omitted).

Defendant is not entitled to an offset for what Defendant believed were "construction and

scaffolds erected at the Premises for an unreasonably long period of time[.]"  Dkt. No. 24-1 ¶ 7.

The Initial Lease provides that Plaintiff "is not liable for damages or otherwise in the event

Tenant suffers them as a result of any act committed or omitted to be performed by the

Condominium Association or the Board of Manager [sic] or any other party."  Lease ¶ 80.

Plaintiff avers that it "has never erected scaffolding outside Tenant's premises."  MS Decl. ¶ 15.

Defendant offers no evidence that puts that assertion to genuine dispute.  The Premises is part of a forty-two-story building owned by the Strand Condominium, and the condominium association installed scaffolding prior to April 2020 in connection with a building inspection by the New York City Department of Buildings.  *Id.* ¶¶ 16–18.

Defendant argues that it is entitled to discovery.  The Second Circuit has consistently held that under Federal Rules of Civil Procedure 56(d), a party opposing a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion must file an affidavit explaining: (1) what discovery he needs; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful.  *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 923 (2d Cir. 1985); *UBS AG, London Branch v. Greka Integrated, Inc.*, 2022 WL 2297904, at *3 (2d Cir. June 27, 2022) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004)).

Defendant had the opportunity to take discovery.  The Court's Case Management Plan and Scheduling Order permitted Defendant to serve document requests, interrogatories, deposition notices, subpoenas, and requests for admission.  Dkt. No. 16.  Plaintiff served initial disclosures, requests for production of documents, and interrogatories in accordance with the Case Management Plan and Scheduling Order.  Dkt. No. 23-5 ¶ 8.  Defendant did not respond to the requests for production or interrogatories.  *Id.*  Defendant also did not serve any initial disclosures, requests for production of documents, interrogatories, or any other discovery requests.  *Id.* ¶ 9.  Defendant may not now be heard to complain that he lacks access to facts that would create triable issues; he had the opportunity to take discovery and did not take advantage of that opportunity.  Defendant has not demonstrated that there exists an issue as to which

discovery would be productive.  Nor has he shown why, if there were discoverable issues, he did not seek discovery.

## II.    Damages

Plaintiff seeks a total of $359,820.57 in damages, consisting of: (1) $289,859.10 in Basic Monthly Rent, (2) $65,951.43 in real estate tax increases, (3) $1,572.29 in common charge increases, and (4) $2,437.75 in attorney's fees.  *See* Dkt. No. 23-13.  Plaintiff also requests prejudgment interest from September 16, 2022.  Dkt. No. 1 at ECF 4.

"Summary judgment may be granted on damages where there is no fact dispute as to the amount of damages."  *GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*, 2008 WL 3891257, at *3 (S.D.N.Y. Aug. 21, 2008).  "Where the contract at issue gives rise to a monetary payment obligation, then the amount owed should be awarded as damages."  *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018) (citing *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 41 (2d Cir. 2009)), *adopted by*, 317 F. Supp. 3d 707 (S.D.N.Y. 2018)).

Plaintiff has established that under the Guaranty, it is entitled to recover Basic Monthly Rent and additional rent, which includes common charge increases.  Dkt. No. 23-8 ¶ 3; Lease ¶ 46(e) ("Tenant shall pay any amount due under this Section 46 [common charges] . . . the same as rent and additional rent.").

Plaintiff has likewise established its right to payment of attorney's fees.  Article 19 of the Initial Lease provides in pertinent part:

> If [Plaintiff]  . . . in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures for the payment of money, including but not limited to attorney's fees including but not limited to consultations, in instituting, prosecuting or defending any actions or proceeding, such sums so paid or obligations incurred . . . shall be deemed to be additional rent hereunder.

Lease ¶ 19.  Courts routinely award attorney's fees to leasers when the lease and guaranty clearly and unambiguously provide for such award.  *See, e.g.*, *Ruradan Corp. v. City of New York*, 2024

WL 2882185, at *13 (S.D.N.Y. June 6, 2024); *W6 Facility X, LLC v. W. 6 Care Ctr., Inc.*, 95

N.Y.S.3d 95, 97 (2nd Dep't 2019); *RSB Bedford Assocs., LLC v. Ricky's Williamsburg, Inc.*, 933

N.Y.S.2d 3, 8 (1st Dep't 2011); *9-11 Stanton St. Realty*, 203 N.Y.S.3d at 17.

However, Plaintiff is not entitled to $65,951.43 in real estate tax increases. Under New

York law, guaranties are construed narrowly in favor of the guarantor. *Flexi-Van Leasing, Inc. v.

Isaias*, 23 F. Supp. 2d 419, 422–23 (S.D.N.Y. 1998) (citing *Dunkirk Tr. Co. v. Schmitt*, 316 F.2d

537, 539 (2d Cir. 1963)). A guarantor cannot be bound beyond the express terms of the

guaranty. *Id.* (citing *Wesselman v. Engel Co.,* 127 N.E.2d 736, 738 (N.Y. 1955)). "[O]rdinary

principles of contract construction" govern the interpretation of guaranty agreements. *Navarro*,

36 N.E.3d at 85 (citation omitted).

The Guaranty does not expressly cover real estate tax increases. It covers only "Basic

Monthly Rent, and additional rent," without any language imposing an obligation on Defendant

to guaranty payment for real estate tax increases. Dkt. No. 23-9 ¶ 3. The Initial Lease does not

expressly define "additional rent" to include real estate tax increases, as Plaintiff acknowledges.

Dkt. No. 23-27 at 4 n.1; Dkt. No. 23-2 ¶ 4. Instead, it defines various other items such as fire

insurance increases, insurance advances, water charges, mechanic's lien advances, and excess

rent from subleasing that are payable "as additional rent," Lease ¶¶ 6, 8, 28, 72, 77, but real

estate tax increases are conspicuously absent from that list. The Initial Lease further

contemplates that in addition to rent and "additional rent," there will be "other charges payable

under this Lease." *Id.* at ¶ 50. Real estate tax increases thus are best understood to be "other

charges." The Court declines to rewrite the Guarantee to include terms to which the parties did

not agree. "The court's role is limited to interpretation and enforcement of the terms agreed to

by the parties; it does not include the rewriting of their contract and the imposition of additional

terms." *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 647 N.E.2d 1298, 1302 (N.Y. 1995) (citation omitted); *accord Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 307 (2d Cir. 2016).

Plaintiff argues that real estate tax increases were historically billed and paid in the same manner as Basic Monthly Rent and other charges. Dkt. No. 23-27 n.1; Dkt. No. 23-2 ¶ 4. However, "[w]here a contract is clear and unambiguous on its face, the intent of the parties must be gleaned within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.,* 329 F.3d 310, 314 (2d Cir. 2003) (citations omitted). A clear, unambiguous contract will be enforced according to its terms, "regardless of one party's claim that he intended something else." *Kay–R Elec. Corp. v. Stone & Webster Const. Co., Inc.,* 23 F.3d 55, 58 (2d Cir. 1994) (citation omitted); *accord Uribe v. Merchants Bank of N.Y.,* 693 N.E.2d 740 (N.Y. 1998). Since the terms are not ambiguous, extrinsic evidence is inadmissible. A contract does not become ambiguous simply because a term is undefined or the parties argue different interpretations. *United States v. Am. Soc'y of Composers, Authors & Publishers*, 309 F. Supp. 2d 566, 573 (S.D.N.Y. 2004) (citing *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183–84 (2d Cir.2003)), *as clarified*, 323 F. Supp. 2d 588 (S.D.N.Y. 2004); *Discovision Assocs. v. Toshiba Corp.*, 2009 WL 1373915, at *5 (S.D.N.Y. May 18, 2009), *order amended on denial of reconsideration*, 2009 WL 1904518 (S.D.N.Y. June 30, 2009). Therefore, Plaintiff is entitled to recover Basic Monthly Rent, common charge increases, and attorney's fees, but not real estate tax increases.

Plaintiff is entitled to an award of prejudgment interest. New York law determines whether an award of prejudgment interest is appropriate. *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir.1998) (holding that state law applies to calculation of prejudgment interest on

supplemental state law claims). "[I]n an action at law for breach of contract under New York

law, 'prejudgment interest is recoverable as of right.'" *TNR Logistics Co. v. Status Logistics*

*Corp.*, 2018 WL 4062633, at *4 (E.D.N.Y. Aug. 27, 2018) (quoting *Trademark Rsch. Corp. v.*

*Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993)); *see* CPLR 5001(a) ("Interest shall be

recovered upon a sum awarded because of a breach of performance of a contract."). "If the

parties failed to include a provision in the contract addressing the interest rate that governs after

principal is due or in the event of breach, New York's statutory rate will be applied as the default

rate." *NML Cap. v. Republic of Argentina*, 952 N.E.2d 482, 488–89 (N.Y. 2011). Although the

Initial Lease provides for the award of prejudgment interest in the event of default, it does not

specify a particular rate. *See* Lease ¶ 19 ("If Tenant shall default in the observance or

performance of any term or covenant on Tenant's part to be observed or performed . . . and if

Owner, in connection therewith or in connection with any default by Tenant in the covenant to

pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money,

including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending

any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or

obligations incurred *with interest* and costs shall be deemed additional rent hereunder and shall

be paid by Tenant to Owner." (emphasis added)). The Court therefore applies New York's

statutory rate as the default rate. "Under New York law, in a breach of contract action,

'prejudgment interest must be calculated on a simple interest basis at the statutory rate of nine

percent' per year, with certain exceptions that are not relevant here." *Jamil v. Solar Power Inc.*,

230 F. Supp. 3d 271, 277 (S.D.N.Y. 2017) (citing CPLR 5001; 5004); *see also Marfia*, 147 F.3d

at 90 ("New York courts have held that in a breach of contract action of this sort prejudgment

interest must be calculated on a simple interest basis at the statutory rate of nine percent.");

*Constellation Newenergy, Inc*, 2022 WL 3334707, at *4; *Rhee v. SHVMS, LLC*, 2023 WL 8889697, at *10 (S.D.N.Y. Dec. 26, 2023).

Plaintiff seeks prejudgment interest running from September 16, 2022.  *See* Dkt. No. 1. Interest generally runs from "the earliest ascertainable date the cause of action existed."  CPLR 5001(b).  But "[c]ourts have 'wide discretion in determining a reasonable date from which to award pre-judgment interest, and interest is calculated using the simple . . . [rather than] a compounded rate.'"  *Kuan v. Notoriety Grp. LLC*, 2023 WL 3937317, at *11 (S.D.N.Y. May 22, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015)), *report and recommendation adopted*, 2023 WL 3936749 (S.D.N.Y. June 9, 2023).  The Court finds that Plaintiff is entitled to prejudgment interest at a statutory rate of nine percent per year beginning on September 16, 2022.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court awards Plaintiff damages in the amount of $293,869.14 plus interest at the statutory rate of 9% from September 16, 2022.

The Clerk of Court is respectfully directed to enter judgment for Plaintiff in the amount of $293,869.14 plus interest at the statutory rate of 9% from September 16, 2022.  The Clerk of Court is further directed to close this case.


SO ORDERED.

Dated: January 28, 2025
         New York, New York
                                                    _____
                                                           LEWIS J. LIMAN
                                                    United States District Judge